JOHN GLENN, TRUSTEE OF
    CHARLES GROVER,
        vs.
CHARLES GROVER AND
    MATTHEW McCOLM.

JULY TERM, 1850.

[DEEDS FRAUDULENT AS TO CREDITORS.]

A conveyance, even if for a valuable consideration, is not, under the statute of *13th Elizabeth*, valid in point of law, from that circumstance alone. It must also be *bona fide*, for if it be with intent to defraud, or defeat creditors, it will be void, though there may be a valuable consideration.

The fraudulent intent must be shown. It is not a thing to be presumed, but must be proved, and by evidence sufficient for the purpose.

[The proceedings in this cause originated in the equity side of Baltimore County Court on the 15th of May, 1841. The object of the bill, which was filed by the complainant Glenn, as the permanent trustee of the defendant, Charles Grover, an insolvent debtor, and as administrator of Eaton R. Partridge, in behalf of himself as such administrator, and other creditors of said Grover, is to set aside two deeds of conveyance. The first dated the 20th of April, 1839, is from John Scott, and Robert Purviance, Jr., trustees, Rebecca B. Carter, and the said Charles Grover, as grantors, and conveys to the defendant, Matthew McColm, the grantee, a farm lying in Baltimore county, containing about 206¼ acres of land. The second, dated the 18th of July, 1839, is from said Charles Grover, and conveys to the same party, for the consideration of $1100 therein expressed to have been paid by the grantee to the grantor, all the stock and farming utensils on said farm.

The bill charges that the first deed, so far as it operated to convey the interest of Grover in said farm, was made without consideration, and with a design to hinder, delay, and defraud his creditors ; that the grantee well knew this intent, and combined with the grantor in effectuating it:—That the second deed was fraudulently made, and designed to hinder, delay and defraud the creditors of the said Grover, and that the consideration therein mentioned was colorable merely and was not paid

3*

at the time of its execution—that the grantee received it knowing of such fraudulent intent, and helping to effectuate it.

The bill further charges, that at the time of the execution of these deeds, the said Grover was utterly insolvent, and known so to be by the defendant, *McColm*, and that the property described in said deeds constituted the largest part of his available assets. That ever since the execution of these deeds, said Grover had remained in possession of the property, mentioned in them, and has used and enjoyed the same and taken the rents and profits thereof to his own benefit and still continues so to do. The bill then states that Grover applied for the benefit of the insolvent laws on the 16th of March, 1841—the appointment of Glenn as his trustee—and said Grover's indebtedness to the estate of the said Eaton R. Partridge, and then prays said deeds to be declared fraudulent and void, &c.

The answer of McColm, which was filed on the 31st of August, 1841, admits the execution of the deeds, but denies that they, or either of them, were or was, made without consideration, and with a design to delay, hinder, or defraud the creditors of said Grover, or that they or either of them, was received by this defendant, knowing of such intent or purpose, but, on the contrary, avers that they were both made for *bona fide* considerations, paid by the respondent before their execution, except a small balance upon the real estate, which was paid immediately after. This answer also states that respondent has no knowledge of the debts due by said Grover, at the time of the execution of these deeds, but denies that he was then utterly insolvent and unable to pay his debts. It asserts that Grover has remained in possession of the property since the execution of the deeds, but denies that he has used, enjoyed and taken the rents and profits thereof to his own benefit, but on the contrary, avers that said Grover has remained in possession thereof, as the tenant of the defendant, under articles of agreement, which are exhibited with the answer. It also admits that Grover has petitioned for the benefit of the insolvent laws, which petition is still pending—the appointment of the complainant as his trustee, &c.

The answer then proceeds to state the considerations for the said deeds, in substance as follows: That previous to the execution thereof, Grover being engaged in the lumber business, had considerable dealings with respondent, and on the 1st of July, 1838, there was a balance due respondent of $2220 95. Said Grover then transferred to respondent a certain claim of $3245, upon which respondent has since advanced the further sum of $1500, said Grover guaranteeing the payment thereof. This claim was not collected by respondent, owing to the insolvency of the party against whom it existed. On the 3rd of April, 1839, respondent loaned Grover an additional sum of $120, whereby Grover became indebted to respondent, in the gross sum of $3892 88 principal and interest up to the 15th of April, 1839. That the land conveyed by the deed then executed, was sold by said Scott and Purviance as trustees under a decree of the Court of Chancery, to said Rebecca B. Carter, who, on the 1st of March, 1838, transferred the benefit of said purchase to Grover, by a written agreement. That on the said 15th of April, 1839, respondent agreed to purchase said land from Grover, for $25 per acre, and in pursuance of said contract, paid said Scott and Purviance $1434 78, and gave Grover a discharge for said sum of $3892 88, as above, and received the conveyance of the 20th of April, in which said Rebecca joined as grantor. That this left the small sum of $128 08 due Grover, which was afterwards fully paid and satisfied. That this contract was made, as a *bona fide* and fair purchase, without any reservation of any kind or nature, and without any claim or reversion on the part of Grover to said land and without any view to Grover becoming an insolvent debtor. That after this, respondent, upon the faith of the stock and implements on said farm, which were owned by Grover, made further advances to him, to a sum amounting, on the 18th of July, 1839, to more than $2000. That at that time respondent purchased and received a bill of sale of said stock, &c., for the sum of $1100. That this purchase also was *bona fide* and fairly made without said Grover being or contemplating to become an insolvent debtor.

The answer of Grover which was filed on the 10th of June, 1842, states that he, Grover, purchased the farm of Rebecca Carter, for $25 per acre, making the total purchase money about $4275. That he paid in money about $1500, which sum he borrowed from the defendant, McColm, and by a small house which he conveyed to said Rebecca, $700. Respondent, also, on account of said purchase, built two houses for said Rebecca at a charge of $1800, of which sum, McColm advanced him between $1000 and $1100. That no other satisfaction was made by him on account of said purchase money. That being indebted to McColm for the said advances, and for other moneys to a large amount, respondent, in satisfaction of his indebtedness, agreed with McColm to cause said farm to be conveyed to him, together with the stock and farming utensils thereon, he, McColm, paying the balance due for said purchase, amounting to about $1400, that according to this agreement, the deeds above mentioned were executed without any such fraudulent purpose as charged in the bill. This answer also states that he, Grover, has remained in possession of said farm as the tenant of McColm. That said McColm purchased said property, fairly and *bona fide*, and that defendant has no interest therein, "and no right to claim a reconveyance thereof except so far as said McColm may think proper to reconvey them to defendant, on payment of all that this defendant owed him, on every account, and that may remain unsatisfied; the said McColm having, *after* the said conveyance of the farm and chattels, so *promised* to said defendant, but without any such view to reconveyance, or any terms to that effect, or on that subject, having been a part of the agreement, under which the said conveyance was made to said McColm." He admits his application for the benefit of the insolvent laws, and also that at the time said conveyances were executed, "he was indebted considerably."

It was proved on the part of the complainants, by many witnesses, that Grover had been in possession of the farm and stock and utensils thereon, from the 26th April, 1839, up to the present time, and so now continues. That he had and has ap-

parently the entire management and control thereof. That no other person, to the knowledge of the witnesses has ever exercised any control or acts of ownership over the same. That said Grover had cut and sold wood, &c., from said place.

The complainants also filed with the commissioners the proceedings upon the application of said Grover for the benefit of the insolvent laws, by which it appears, that in the schedule of his property, after stating how he became possessed of said farm, and the conveyance thereof to McColm, said Grover, states as follows: "The conveyance to Mr. McColm was taken by him under the following agreement, between him and myself, to wit: that if within five years I should pay all my debts to him, on all accounts, he would convey the property to me, but that if the amount of all my indebtedness were not so paid, the farm and all the stock and utensils thereon should be sold and the said indebtedness be thereout satisfied." To this evidence McColm excepted, on the ground that it is not admissible as against him.

The only witness examined on the part of the defendant, was Charles F. Mayer, who states that the insolvent papers for said Grover were prepared by witness at his office, when no one was present except witness and Grover, and that witness attended Grover until he obtained his personal discharge. That McColm did not read said papers, and was not informed of their contents at and up to the time of Grover's obtaining his personal discharge.

The complainants excepted to the admissibility or competency as evidence in the cause, of any and all parts of the answers of the defendants, setting up any consideration affirmatively, as having been paid by said McColm to said Grover, or the trustees for the sale of the farm mentioned in the proceedings, for the property alleged to have been fraudulently conveyed to McColm.

The cause was removed to this court upon the suggestion of the defendant, McColm, and after argument by counsel, the following opinion was delivered:]

THE CHANCELLOR:

The object of the bill filed in this cause, is to set aside two conveyances, the one from the defendant Grover and others, to the defendant McColm, dated the 20th of April; and the other dated the 18th of July, 1839, from Grover alone, upon the ground, as to the first deed, that it was made without consideration, and fraudulently to delay, hinder and defraud the creditors of the grantor, Grover, and as to the other, that it was fraudulently made, tó delay, hinder, and defraud the creditors of said Grover.

The answer of McColm, with which alone we are to deal, for that of Grover, even if inconsistent with his, could not be read against him, denies the allegations of the bill, and the simple question is, whether the proof offered by the plaintiff, is sufficient, according to the well and long established law of this court, to overcome the answer?

Some discussion was had at the bar, with reference to the character of that part of the answer, which states how, and in what manner, the consideration set forth in the instruments, was paid. It being insisted upon the one hand, and denied on the other, that the answer, in this respect, is responsive to the bill. The bill alleges, that the deed of the real estate, was made without consideration, and fraudulently, to hinder and delay creditors. The answer denies that it was made without consideration, and fraudulently, and then proceeds to state what the consideration was. Now although so much of the answer as states what the consideration was, may not be strictly responsive (a point not intended to be decided) yet the denial of the allegation of the bill, that there was no consideration, is confessedly responsive, and must be overborne by the requisite evidence or must stand for true.

That a consideration was paid for these conveyances, is most clearly established by the evidence; but still it is said, and such appears to be the established law upon the subject, that though made upon a good or valuable consideration, they will not be permitted to avail, if made *mala fide*. A conveyance, even if for a valuable consideration, is not, under the statute of 13th of

Elizabeth, valid in point of law, from that circumstance alone. It must also be *bona fide;* for if it be with intent to defraud or defeat creditors it will be void, though there may be a valuable consideration. This doctrine was laid down in *Twyne's case,* 3 *Co. Rep.*, 81, and as Mr. Justice Story says, has been since steadily adhered to. 1*st Story's Eq. Jurisprudence, section* 369. But though a deed made upon a valuable consideration may be successfully impeached, if shown to be made to defraud, or defeat creditors, it is of course indispensably necessary that the fraudulent intent should be shown. It is not a thing to be presumed, but must be proved, and by evidence sufficient for the purpose.

Now, in this case I am not satisfied of the existence of the fraudulent intent. The statement of Grover upon his application for the benefit of the insolvent laws, being excepted to, is clearly inadmissible as evidence against his co-defendant, Mc-Colm, and even if admissible, could not, for the purpose for which it was offered, avail the plaintiff, against the direct and positive evidence of Mr. Mayer, who proves conclusively, that the said defendant could not have had any connection with, or knowledge thereof.

Circumstances here are relied upon, and those circumstances, when ingeniously and skillfully combined, may be made to wear the appearance of suspicion, but I do not find in them, that degree of conclusiveness, which, in my opinion, should induce a court of equity, to take from a purchaser property for which he paid a valuable consideration. The agreement for a reconveyance, upon receiving from the grantor the amount advanced for, and due by him to, the defendant, McColm, is denied, and not proved, and, therefore, it is not necessary to consider what would be the effect of such an agreement if proved, or admitted. I cannot, upon this record, bring myself to think, that McColm, in taking these conveyances, was influenced by a desire to defraud or defeat the creditors of Grover. He had a perfect right, upon common law principles, and apart from our insolvent laws, to secure himself, and with respect to the real estate, there appears in the case, reasons of special weight, entitling

him to that security. The bill, I am of opinion, must be dismissed, but inasmuch as I think it was not brought without some plausible grounds, and perhaps it was the duty of the plaintiff in his character of trustee, to file it, costs will not be allowed.

S. T. Wallis,
J. Mason Campbell,    } for Complainant.

John Nelson,
Charles F. Mayer.    } for Defendants.