## Thomas R. Rich, and others, *vs.* Charlotte Levy and Samson Levy.

A bill by a creditor who had not reduced his claim to judgment and exe-
cution, nor in any other manner acquired a lien upon his debtor's pro-
perty, alleged that the debtor is selling his goods and applying the pro-
ceeds to his own use, and the use of others without consideration, and
thus, and in other ways, is wasting his resources, and is sending large
quantities of his goods beyond the reach of his creditors, and is utterly
insolvent. HELD:

That these allegations do not make a case for the interposition of a court
of equity, to restrain, by injunction, the debtor in the enjoyment and
power of disposition of his property.

Where answers are called for and given *under oath*, denying the allegations
of fraud in the bill, they are strong evidence for the defendants, and un-
less rebutted by the degree of evidence required by the rule in such
cases, must be taken as proof of what they allege.

A mortgage to be valid must be *bona fide*, for if it be made with intent to
defraud or defeat creditors, it will be void, though there may be, in the
strictest sense, a valuable and adequate consideration.

When a sale, assignment, or other conveyance, merely amounts to giving
preference to one creditor over another, it is not to be treated as *mala
fide*, but as merely doing what the law admits to be rightful; it is not
necessarily fraudulent because it operates to the prejudice of a partic-
ular creditor.

APPEAL from the Circuit Court for Baltimore city.

Appeal from a decree of the court below dissolving an in-
junction discharging a receiver, and dismissing the bill filed
by the appellants against the appellees, on the 15th of Janu-
ary 1857.

The mortgage bill of sale from Charlotte Levy to Samson
Levy, which the bill prays may be declared void, is dated
the 15th of December 1856, and was recorded on the 17th of
the same month. It recites that: "Whereas, the said Char-
lotte is justly and *bona fide* indebted to the said Samson Levy
in the full sum of $2261.35, for so much money loaned and
advanced from time to time by the said Samson to the said
Charlotte Levy, and has passed therefor to the said Samson
her promissory note bearing even date herewith, and payable
six months thereafter, with interest thereon until paid, and to.

secure the punctual payment of the said note, with the interest thereon, at maturity, has agreed to execute these presents," and conveys to the grantee all the stock of goods con-contained in a store, No. 33 West Baltimore street, consisting of calicoes, ginghams, muslins, shawls, &c., with condition to be void on payment of said note, with interest, at maturity.

The allegations of the bill and answers, and the purport of the evidence, are sufficiently stated in the arguments of counsel, and the following opinion of the court below (KREBS, J.,) delivered upon passing the decree appealed from.

"The complainant alleges in his bill, that the defendant, Charlotte Levy, by falsely representing the extent of her means, induced him to sell her goods in his line of business, on account of which she made him small payments, from time to time, until the 12th of December last, when she owed him $1261.19. That she has refused to pay her creditors in whole or in part, and puts them off, with various pretences, and declines giving any truthful account of her affairs; that she has, within a short time before the filing of the bill, been selling her goods, and applying the proceeds to her own use, and to the use of others, without consideration; and thus, and in other ways, is wasting her resources; and that within that period she has sent, and is now sending, large quantities of her goods beyond the reach of her creditors, and has greatly reduced the amount thereof, and is utterly insolvent. He further alleges that, on the 15th of December last, she executed a mortgage of all her stock in trade, to her son Samson Levy, without good consideration therefor, and that it was not made *bona fide*, but was designed to hinder, delay and defraud her creditors; and that, at the time of the execution thereof, he knew of the fraudulent circumstances attending the same, and in fact had combined with her in her said design. The complainant alleges, further, that he has brought suit against her, but will not be able to obtain judgment and execution against her, before she will have wholly wasted her assets. The bill calls for the answers of the defendants, *upon oath,* and prays for an injunction, and receiver;

and that the said mortgage may be declared void, and that the effects of the said Charlotte may be applied to the payment of her creditors. The injunction was ordered and receiver appointed, and the case has been argued by the solicitors for the respective parties, upon final hearing. Since the decision of the Court of Appeals of this State, in the case of *Uhl vs. Dillon,* 10 *Md. Rep,* 500, upon appeal from the Circuit court for Baltimore county, delivered at the last June term, and since this bill was filed, it is perfectly manifest, that if all the facts charged by the complainant, in regard to the manner in which the defendant, Charlotte Levy, was disposing of her goods, and appropriating the proceeds, were admitted, they would not furnish a case for the interposition of this court by injunction, "restraining her in the enjoyment, and power of disposition of her property," upon the application of a creditor like the complainant, "who has not prosecuted his claim to judgment, and execution, nor in any other manner acquired a lien upon his debtor's property." The bill, in that case, alleged, that the defendant was disposing of his entire stock in trade, and his real estate, and collecting the debts due to him, and secreting the same, with intent to defraud his creditors; that he meant, after making his sales, and completing his fraudulent purposes, to abscond, for the purpose of hindering, delaying and defrauding his creditors, &c. The court says: "No authority has been shown to this court, nor can any be produced, entitled to consideration, which sanctions the exercise of the high and extraordinary power of a court of chancery, to interpose by writ of injunction, like the one before us, restraining a debtor in the enjoyment and power of disposition of his property." The creditor in that case had acquired no lien upon the debtor's property by judgment and execution, nor otherwise, and the court further says: "Whatever may be the supposed defects of the existing laws of the State, in leaving to the debtor the absolute power of disposing of his property, and leaving the creditor to the slow, and very inadequate remedies now provided, it is solely in the power of the Legislature to correct them. It is not within the power of the chancery

Rich, *et al. vs.* Levy, *et al.*

courts to stretch their powers beyond the limits of the authorities of the law, for the purpose of remedying such defects." The principles decided by the court in that case, and those which it adopts, decided in the cases to which that refers, satisfy me, that nothing alleged in this bill, if true, would authorise this court to grant the relief for which the complainant prays, except his charges in reference to the mortgage of her stock of goods, executed by the defendant Charlotte to her son Samson. The only question, therefore, that I deem it important to examine is, was this mortgage executed for the purpose of hindering, delaying and defrauding creditors? The bill alleges that it was made without consideration, that it was not *bona fide*, and that it was executed for that purpose. The answers of the defendants are called for *under oath*. Charlotte Levy explicitly denies all the allegations in the bill imputing to her fraudulent purposes in regard to her creditors, alleges that it was made for full consideration, that it was *bona fide*, and not intended to hinder, delay or defraud her creditors. Samson Levy, the other defendant, so far as he has knowledge in reference to the matters charged in the bill, denies them likewise. These answers, therefore, have the effect of strong testimony in favor of the defendants, and unless rebutted by the degree of evidence required by the rule in such cases, must be taken as proof of what they allege. I have carefully examined the evidence adduced by the complainant; it is voluminous, but most of it relates to facts which, for the reasons already stated, I have not deemed it important to consider. Weighing that portion of it which has reference to the matters involved in this inquiry, with the evidence produced by the defendants upon the same points, I cannot avoid the conviction, that the weight of the evidence is decidedly in favor of the case made by the defendants in their answers. They deny the allegation in the bill, that the mortgage was given without consideration, and insist that it was executed to secure the payment of money loaned by Samson Levy to his mother, the other defendant, and by way of showing that he had the ability to make the loan, they say, that he had been absent for several years in

California, where he had been successful in business and brought with him, on his return, the funds that he lent to her. Did he bring back with him money enough to enable him to make this loan? The first evidence what he did, is the statements of the defendants, which have been made testimony, by being repeated by the witnesses of the complainant, in answer to the interrogatories propounded upon their examination-in-chief.

His first witness says: "that he was told by Laffman Levy, that his brother, Samson Levy, had just returned from California, and had made deposits in the mint; Mr. Samson Levy was present when Laffman made this remark to witness." Thomas McCann, another witness on behalf of the complainant, says: "that he went to see Mrs. Levy and her sons, about the 4th of December 1856, at her store, about her account with Mr. Rich; on that occasion Samson Levy, Laffman Levy and their brother Robert Levy, stated to witness, that Samson and Robert Levy had deposited what gold they had brought from California, in the mint at Philadelphia, and that they had the certificate of the deposit of this money in their possession." This witness also states in his examination-in-chief, "that *Samson Levy told him, that* the *mortgage* was *given* for *money* that he had *loaned his mother*, and that $1500 was money that he had loaned her since his return from California, and that she had paid it away to parties to whom she was indebted." The amount which this witness says they named to him exceeded considerably the sum of money alleged to have been lent. Without referring particularly to the testimony of the defendants' witnesses, it is sufficient for me to say, that if I am to believe their statements they abundantly prove, that Samson Levy remitted considerable sums of money from California to his mother, and advanced to her much larger amounts after his return, and sufficiently remove any doubts that the complainant has been able to create in regard to the consideration of that mortgage. I cannot disregard the testimony of these witnesses, without finding in the record that their character for veracity has been duly impeached, either by proof that they are not

worthy of belief on their oaths, by exposure of their falsehoods upon cross-examination, or by contradictory evidence. Upon a careful examination of the whole testimony it appears to me that this has not been done. I have, therefore, the weight of this evidence, added to the effect of the sworn answers of the defendants, and the *prima facie* evidence of the mortgage, and its recital and acknowledgment of the loan of the money, and must, therefore, assume that the mortgage was given upon good and adequate consideration. But the solicitor for the complainant contends very justly, that it must also be *bona fide*, for if it be made with intent to defraud or defeat creditors, it will be void, although there may be, in the strictest sense, a valuable, nay, an adequate consideration. *Story*, in his *Equity Jurisprudence, sections* 369, 370, says: "Cases have repeatedly been decided, in which persons have given a full and fair price for goods, yet being done for the purpose of defeating creditors, the transaction has been held fraudulent, and therefore set aside. Thus if a man should know of a judgment and execution, and, with a view to defeat it, should purchase the debtor's goods, it would be void, because the purpose is iniquitous. But *cases of this sort* are carefully *to be distinguished from others*, where a *sale*, or *assignment*, *or other conveyance*, merely *amounts to giving preference* in *payment to another creditor*, for *such* a preference *is not treated as mala fide*, but as merely *doing what* the *law admits to be rightful*. A sale, assignment, or other conveyance, is not necessarily fraudulent, because it operates to the prejudice of a particular creditor." Regarding, as I have done, the testimony in this case, as proving, sufficiently, that Samson Levy was a creditor of his mother to the amount for which the mortgage intended to give him a preference, I must consider this transaction between them as embraced within the class of cases just mentioned, and therefore entitled to the character of a *bona fide* transaction, though it may operate to the prejudice of a particular creditor, or of the creditors generally, because in giving the preference she did nothing more than what the law admits to be rightful. But, it is insisted, that there are cir-

cumstances in the case that should exclude it from this privileged class. It is said that one of her creditors had acquired a specific lien upon a portion of the goods transferred by his mortgage, by virtue of a judgment against her, and execution levied upon them before the mortgage was executed, which he was induced to surrender by unfair conduct and dealing on the part of the defendants, and immediately she gave this mortgage. It appears, however, from evidence in this record, that the fraud in this transaction, if there was any, has been waived by that creditor, and that he has proceeded to obtain judgment and execution, as stipulated for, in consideration of the said release. But if this were not so, and if there were circumstances attending the mode in which the release of this lien was obtained, which, in the view of a court of equity, would impair its validity, they might furnish grounds for relief to this creditor, by reinstating the lien and declaring the mortgage subject to this particular claim, but it does not appear to me that they would entitle the other creditors to insist that the mortgage should be set aside as void under the statute, or this particular creditor to require this to be done, except to the extent of the lien which he had surrendered. And being of opinion, for the reasons which will be more fully stated in the opinion to be filed in the case of *Levy vs. Lewis*, that this court can give no relief to this judgment creditor, even upon the hypothesis that the release of his lien was obtained unfairly, upon the ground of his waiver of the fraud, if there was any; and being further of opinion, that supposing the release was fairly obtained, the arrangement set forth in complainant's exhibit A, created no equitable lien upon the goods of Mrs. Levy, transferred to her son, Samson, who had full notice of the arrangement, I cannot pass any decree in favor of this creditor, even if the pleadings in this case were such as, with a different view of his rights, would enable me to do so, which I think exceedingly doubtful. This case has been argued by the solicitors of the respective parties with great zeal, force and ability. I have given to it much examination and thought, and my reflections upon it have brought my mind to the views and

conclusions above indicated, and I must pass a decree accordingly."

From the decree so passed the complainants appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Wm. B. Perine* for the appellants:

It is admitted that under the decisions in *Uhl vs. Dillon*, 10 *Md. Rep.*, 500, and *Hubbard vs. Hubbard*, 14 *Md. Rep.*, 356, this is not a proper case for an injunction and a receiver, unless the mortgage is void, but if it is void a case of fraud is made out which justifies an injunction and a receiver. The question then is, *is this mortgage void?*

The bill charges that it was made without a good consideration, without *bona fides*, and with a view to hinder, delay and defraud the complainant and *the other creditors* of the grantor. In other words the mortgage is attacked under the *Statute of* 13 *Eliz.*, *ch.* 5. It is admitted that *prima facie* it is, like every other duly executed instrument, valid; and it is for the complainants to show the contrary by satisfactory proof. They may show this by proving that it is not supported by a good consideration, or that it was not executed in good faith, but "to the end, purpose and intent to delay, hinder or defraud creditors." If either proposition be established the conveyance must fall; for even though Samson Levy may have advanced every dollar of the money mentioned in the mortgage, yet if it was executed with a view to defeat creditors, it is fraudulent and void because the purpose is iniquitous. *Story's Eq.*, *sec.* 369. 2 *Md. Ch. Dec.*, 123, *Powles vs. Dilley.* *Ibid.*, 222, *Glenn vs. Randall.* 2 *Cowp.*, 434, *Cadogan vs. Kennett.* 2 *Bos. & Pull.*, 59, *Kidd vs. Rawlinson.* 4 *Bac. Abr.*, 401. 3 *Md. Ch. Dec.*, 354, *Glenn vs. McNeal, et al.*; and *a fortiori* is it void if executed for such a purpose, where only a part of the money set forth in the instrument sought to be sustained, has been advanced—*falsus in uno falsus in omnibus*—and it cannot even stand in such case as a security *pro tanto.* 2 *H. & G.*,

11    v.16

261, *Strike vs. McDonald.* 1 *Md. Rep.*, 470, *Waters vs. Dashiell.* 7 *Gill,* 481, *Albert & wife vs. Winn & Ross.* If void as to any of the creditors of the grantor existing at the time of its execution, it is void as to all and must be vacated in this case, for the bill is filed in behalf of Rich and *all other creditors* of Charlotte Levy, and prays that the mortgage may be declared void, and that Rich and the other creditors may have the effects of said Charlotte applied to the payment of their debts. In case of the avoiding of the mortgage and the sale of the goods, the fund would be retained in equity until all the creditors are notified to come in and assert their claims. 5 *G. & J.*, 451, *Birely vs. Staley.* 2 *H. & J.*, 220, 221, *Strike vs. McDonald.*

Applying these principles to the case, the learned counsel argued from the evidence: 1st. That the sum of $2261, as set forth in the mortgage, was not advanced and loaned by Samson Levy to Charlotte Levy. He said that the facts proved in the case were inconsistent with the testimony of Laffman Levy, that he saw the money paid. But suppose he did, would that prove it to have been the money of the grantee? There would have been no difficulty in performing the ceremony of paying and receiving the money. 3 *Md. Ch. Dec.*, 351, *McNeal vs. Worley*, affirmed in 4 *Md. Rep.*, 97; 7 *Gill*, 377, *Richards & wife vs. Swan.* He further insisted that the evidence did not show that Samson ever had this money to lend, or any money at all. 2nd. But supposing the whole money was paid by Samson Levy, he then contended, from the evidence, that the mortgage was executed without good faith, and to hinder, delay and defraud creditors. He said that the proof shows that Samson was constantly in the store of his mother, the said Charlotte, that he was there when creditors went to press for their claims, that he made propositions to compromise with her creditors for forty cents in the dollar, and that he had access to her books. Indeed his answer admits that she was pressed by her creditors when he made the loan. He knew, therefore, that she was embarrassed and unable to pay her debts, and even though he did not actually know she was insolvent, he knew

enough to put him upon inquiry, and if so, he is presumed to have had notice of her insolvency at the time of taking a mortgage of her property, and indeed of all her property, for there is no proof she had any other. 1 *Md. Rep.*, 415, *Price vs. McDonald.* 10 *Md. Rep.*, 524, *General Ins. Co. vs. United States Ins. Co.* He is then to be regarded as having knowledge of her insolvent condition at the period of the execution of the mortgage, and of the advance of the alleged loan. The proof shows that the complainant was constantly pressing for the payment of his claim, and that Samson Levy, with his brother, was as constantly promising to pay, and the complainant would have brought suit on his claim at an earlier day but for these repeated promises. The agreement to execute the mortgage and the execution of it operated, and was doubtless intended to operate, to the delay of Rich, and the rule of law is that where a result follows from an act, it is to be presumed that the act was done to produce the result. He also insisted that the hindrance and fraud upon creditors became very obvious upon consideration of the other testimony in the cause.

*Orville Horwitz* and *Chas. H. Pitts*, for the appellees.

If the complainants have any equity, it must rest upon the fact that the mortgage to Samson Levy is fraudulent, either because it was not made for a good consideration, or wanted *bona fides* in its character. The question then is is this mortgage valid?

It is not enough to charge fraud in a bill, in order to put the defendants upon proof of innocence. The complainants must prove *their* case, and not start with the idea that fraud is presumed. Now how stand the presumptions here? We have first the mortgage itself, valid upon its face, then the recitals which are *prima facie* evidence of the facts therein stated, that the loan was made, and that the indebtedness did exist, and lastly, the affidavit of the mortgagee that the consideration is true and *bona fide* as therein stated. It is, therefore, valid, until successfully attacked by proof. Again, the answers are *called for under oath*, and both defendants swear

positively to the consideration and *bona fides* of the instrument. They answer under oath, and fully, flatly and positively deny all fraud in every shape in which it is alleged in the bill. These answers must be overcome by two witnesses, or one with pregnant circumstances—no amount of circumstantial evidence *alone* can overcome them—there must be the *one witness*.

The case starts then with the presumption of honesty in its favor, sustained by the affidavit of the mortgagee made at the time, and by the oaths of the defendants in their answers. Here the defendant, Samson, might have stopped and relied upon the absence of all proof, calculated to cast suspicion on the transaction between himself and his mother, but he has not contented himself with relying upon the absence of proof on the part of the complainants. He has voluntarily assumed the burthen, and proved affirmatively both the valuable consideration and the *bona fides*.

The learned counsel, then, argued from the evidence, that the amount of mortgage was actually advanced by Samson Levy, and paid over to the creditors of his mother. This, they said, was proved by the testimony of Laffman and Robert Levy, as well as by the receipts and other documentary evidence in the cause. 2nd. That the mortgage was *bona fide*. If Samson Levy actually advanced the money, for which the mortgage was given, it would seem difficult to comprehend how the actual advance of upwards of $2000, for the purpose of paying the debts of his mother, and the acceptance of a mortgage upon a stock of goods not worth, according to all the proof, the amount of the debt secured, can be construed into an effort to hinder, delay or defraud creditors, to whom the money advanced was from time to time paid. The learned Judge of the court below, has very properly drawn the distinction laid down in 1 *Story's Eq.*, *secs.* 369, 370, between cases of assignment or sale for the purpose of defeating creditors, and cases in which the conveyance merely amounts to giving a preference which the law allows. On this point, and as to the construction of the statute of 13 *Eliz.*, see, also, 7 *Adol. & Ellis N. S.*, 892, *Wood*

*vs. Dixie* in 53 *Eng. C. L. Rep.*, and 35 *Eng. Law & Eq., Rep.*, 261, *Lee vs. Green.*

For the purpose of testing the correctness of the view presented by the complainants, let us suppose that Mrs. Levy had sold her goods and paid her debts as far as the proceeds went; would this be an effort to hinder, delay or defraud her creditors? If not, what difference can there be between such a course and borrowing a certain amount and applying it to the payment of her debts, and at the same time securing the loan on the very goods for which she was paying? But so far from showing fraud on the part of Samson Levy in taking this mortgage, the evidence clearly shows that, he was willing, at all hazards to himself, to aid his mother in her useless efforts to continue her business, and to settle to the best of her ability, fairly with all her creditors.

TUCK, J., delivered the opinion of this court.

We do not discover any reason for disturbing the decree in this cause, From an examination of the record, we think the complainants failed to show that the conveyance was without consideration, and that it was not *bona fide.*

The learned judge below having expressed his views at length, on those points, and, as we think, correctly, we may rest the affirmance of the decree on the opinion filed by him.

*Decree affirmed with costs.*

(Decided June 7th, 1860.)