SELWYN W. MARCUS *v.* WILLIAM H. HUDGINS
ET AL.
WILLIAM H. HUDGINS *v.* SELWYN W. MARCUS.
[Nos. 71, 72, October Term, 1934.]

*Decided January 16th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, and SLOAN, JJ.

*Wirt A. Duvall, Jr.,* for Selwyn W. Marcus.

*Mason P. Morfit,* with whom was *William H. Hudgins* on the brief, for said Hudgins.

PARKE, J., delivered the opinion of the Court.

A bill of complaint was filed by Selwyn W. Marcus against William H. Hudgins, William A. McFarland, J. Norris McFarland, and Joseph C. Deegan, sheriff of Baltimore City, for the purpose of having a judgment obtained on June 23rd, 1932, by William H. Hudgins against William A. McFarland and J. Norris McFarland for the sum of $28,889.50 declared null and void, or, failing that relief, be held and declared nugatory and inoperative so

far as such judgment has priority of lien over a judgment obtained by Selwyn W. Marcus against William A. McFarland and J. Norris McFarland on June 29th, 1932. As auxiliary relief, the complainant sought to have Hudgins enjoined from proceedings to enforce his judgment against a property known as 3405 Garrison Boulevard by writ of execution or otherwise, and also against any property of the defendants to this judgment or either of them. In like manner the sheriff was to be enjoined from the execution of any writ issued on this judgment. Selwyn W. Marcus is also a creditor of William A. McFarland and J. Norris McFarland on a judgment obtained against them on June 29th, 1932, for the sum of $37,039.82, less a credit of $789.30, the amount made as a result of the execution issued on this judgment, and the writ levied upon the property known as 3405 Garrison Avenue. The sheriff sold the property under the execution to complainant's agent, who, on receipt of the deed from the sheriff, conveyed the property to the complainant on September 7th, 1932. William H. Hudgins has had issued a writ of execution on his judgment, and a levy has been made on the same property because of the claim that the earlier judgment is a prior lien to that of the later judgment of the complainant. It is out of this conflict of lien and priority that the litigation at bar arose.

After a hearing, at which the witnesses testified before the chancellor, he decreed that the judgment of William H. Hudgins was void for fraud, and the defendant and the sheriff were perpetually enjoined from levying an execution under the annulled judgment, but he further declared and adjudged that there existed an equitable lien in favor of Hudgins in the sum of $3,500 on the property known as 3405 Garrison Boulevard. The cross-appeals are by the plaintiff and the defendant William H. Hudgins. The first appeal is because of the equitable lien accorded Hudgins, and the second is because of the annulment of the judgment.

The record presents a conflict of testimony, and the court will restrict its statement to the preliminary facts,

which are necessary for a comprehension of the questions for determination, and then give its conclusions of fact.

The plaintiff and William A. McFarland and J. Norris McFarland were merchants in the trade in wool in Baltimore City. They had been associated, at different times, as partners in this business, with varying financial results, and the last partnership of the series was formed in 1928, and was in effect until its voluntary dissolution about May 1st, 1930. After an accounting had been had of the firm's affairs, the two McFarlands were found to be indebted to their former partner, the plaintiff, in the sum of $34,000, for obligations of the firm which Marcus had discharged in excess of his proportion as partner, and the plaintiff accepted of his two former associates their note dated May 1st, 1930, for this amount, without sureties or collateral, and payable one year after date without interest. During the progress of the audit, it developed that the makers of the note would be in the debt of the plaintiff, and Marcus, inquiring into their assets, discovered that one Dr. Walter F. Sowers was indebted to them in the principal sum of $10,000, which was secured by a mortgage lien on the property known as 3405 Garrison Avenue. Before this discovery by Marcus, Hudgins, who had a residue of $3,500 due on a $6,000 fee bill against the McFarlands for valuable services rendered in lengthy litigation in respect to the amount of excess profits tax payable to the federal government during the period 1922-1927, was pressing the McFarlands for the payment of this fee out of this mortgage debt of Sowers. The McFarlands agreed to this application of the mortgage debt, but the mortgagor and mortgagees had a controversy with respect to the existence of this debt, on which interest had accumulated for a number of years, and ultimately the parties compromised for the sum of $8,000, which was to be raised by the mortgagees' executing a release of the mortgage debt before the payment of this sum, so that the mortgagor could put through a new mortgage loan on the property for $8,000 in order to secure and pay the agreed sum to the mortgagees. In-

cluded in this plan was the sale of a ground rent owned by the McFarlands. Sowers was visited by Marcus, and became alarmed by the inquiry of Marcus. A conference was had by the mortgagor, the mortgagees, and Hudgins, the attorney of the latter. Acting under the advice of Hudgins, the mortgagees released the mortgage on April 2nd, 1930, and postponed the consummation of the sale of the ground rent and deferred the payment by Sowers of the agreed $8,000 until such time had elapsed that the sale of the ground rent could be completed without any danger of the purchaser, an innocent party, becoming involved in any litigation that Marcus might undertake. Marcus took no action, and at the expiration of six months the title to the ground rent was transferred, leaving the compromised mortgage debt the only asset of the McFarlands, and the plaintiff and Hudgins the only creditors.

Sowers refused to pay the $8,000 to the McFarlands, and Hudgins then, about January 12th, 1931, approached the attorney of Marcus and informed him of this situation and of the agreement between the McFarlands and Hudgins that out of this sum $3,500 was to be first paid to Hudgins to discharge the residue of a fee of $6,000, due by the McFarlands for certain professional services rendered. Hudgins proposed that a bill of complaint would be filed by the McFarlands against Sowers to have the release of his mortgage lien stricken down, and that, in the event the bill were successful, the proceeds would be divided so that Hudgins would receive $3,500, the McFarlands $2,000, and Marcus the residue. The attorney did not accept the proposed alliance and agreement on this occasion. A subsequent conference was had in the latter part of the same month between Marcus, with his attorney, Philip B. Perlman, and Hudgins, and Marcus declined to accede to anything being paid to the McFarlands. According to one version of what happened at this and other meetings of the parties, it was agreed that the McFarlands would not get anything, that the bill of complaint to set aside the release of the mortgage debt against

Sowers should be filed by the McFarlands, and, if the suit were successful, that Hudgins was to receive $3,500 out of the proceeds of the mortgage debt, and the residue was to be paid to Marcus. The other version is in agreement with respect to the exclusion of the McFarlands, but differs in other respects, since it is contended that Marcus and Hudgins did not come to any agreement as to the proportions or amounts that each was to receive. The chancellor found that the weight of the testimony supported the first view, and that is the conclusion of this court.

Three days after the conference of January 28th, 1931, the bill of complaint was filed in the name of the McFarlands against Sowers to set aside the release of the mortgage. The complainants were successful, and on April 23rd, 1931, a decree was entered annulling the release. An appeal was taken by Sowers on June 11th, 1931, and on February 5th, 1932, the appeal was affirmed by a divided court. Since no bond was filed when the appeal was taken to stay the proceedings, a foreclosure was had, with the approval of Marcus, under the mortgage deed, and ultimately the property was sold to the McFarlands for $7,600, and on March 9th, 1932, the sale was ratified. Hudgins, as trustee for foreclosure, conveyed the property to the purchasers, and simultaneously the McFarlands gave a mortgage lien on the property so bought to the Central Savings Bank, to secure a loan of $1,800, which was used to pay the costs and expenses of the foreclosure proceedings and some repairs incurred to put the mortgaged premises in condition.

During the period in which these events occurred, the note to Marcus for $34,000 matured, and he endeavored to obtain a renewal note payable on demand with interest, and a power to enter a judgment by confession. The McFarlands declined to give a demand note with the power, but did execute a renewal note on May 1st, 1931, for $34,943.23, payable one year after date, with interest from date.

Shortly after the chancellor had annulled the release, the difference in the versions of what had been agreed with respect to the disposition of the proceeds of the mortgage lien was disclosed, and each party maintained his position in the hope that it would be accepted, and it was not until March 24th, 1932, that the parties abandoned their efforts at a settlement and assumed a hostile attitude.

The $3,500 due to Hudgins on his fee for professional services in a particular matter was not the whole amount of the debt of the McFarlands. From 1922 to 1931, inclusive, Hudgins was employed by them as attorney in connection with the development of a typesetting device on which the McFarlands had spent more than $150,000. There can be no dispute about his employment and the nature and extent of his services, nor the promise of the McFarlands to compensate him, because there is no contradiction of the testimony, and no ground upon which it could be rejected. *Drury v. State Capital Bank*, 163 Md. 95, 96, 161 A. 176. Nor can there be any question that these services were valuable. Ralph Robinson, Esq., an attorney of experience and established reputation, testified that, after making an allowance for the stock issued to Hudgins, his opinion was that the services rendered were worth from $15,000 to $25,000. J. Norris McFarland testified that, based upon an experience acquired in other litigation, he did not consider the fee of $25,000 as excessive. There was testimony of the fees paid to other attorneys for work done in connection with some details of the development of the project during the period of Hudgins' services which tended, in some slight measure, to establish the reasonableness of the charge. In fact, the counsel for the plaintiff stated to the court, in the course of Mr. Robinson's examination in chief, "He is testifying to what is a fair and reasonable fee. We are attacking the *bona fides*, not the amount."

It follows that, although the fee agreed upon is large, it is not, according to the testimony, inordinate; and,

while a long period is covered by the services without any portion of the fee being paid or demanded, yet indulgence on the part of the creditor to the debtor, however long, does not discharge the obligation, which constitutes a valuable consideration for a promissory note given by the debtor to the creditor for the amount agreed to be due, when expectations of profitable business and large yields had failed, and a promise to pay, in writing, an agreed compensation, was the only practical alternative left. Under these circumstances, the combination of the fee of $25,000 for the one form of professional services with the residue of $3,500 unpaid on the fee for other work in a note from the debtors to the creditor in the aggregate amount of $28,500, dated April 1st, 1932, payable on demand, with interest from date and a power to enter a judgment by confession, was upon a valuable, full, and adequate consideration, and was not executed with a fraudulent intent upon the part of the judgment debtors and creditor to hinder, delay, and defraud the plaintiff. *Cooke v. Cooke,* 43 Md. 533; *Fuller v. Brewster,* 53 Md. 358; *Crooks v. Bryden,* 93 Md. 640, 644, 49 A. 921; *Commonwealth Bank v. Kearns,* 100 Md. 202, 208, 209, 59 A. 1010; *Drury v. State Capital Bank,* 163 Md. 84, 88-91, 161 A. 176; *Uniform Fraudulent Conveyance Act* (Code, art. 39B, secs. 3 (a) and 4.)

The situation, therefore, after April 1, 1932, was that there were two valid outstanding obligations against the McFarlands. The one held by the plaintiff was on the promissory note of $34,943.23, and the one held by Hudgins was on the promissory note of $28,500. The consideration for the first was the proportion of the firm debts of the makers and payee as copartners which the payee had paid to the firm creditors as a principal debtor, but which, being in excess of his share as a partner, was paid, as between the partners, for the account of the defaulting partners, the makers. The consideration, however, for the second was for fees due by clients to their attorney. The first, therefore, was a derivative obligation between parties jointly bound as principals,

and the second was an original obligation between the hirers and the hired. Consequently, the nature of the plaintiff's obligation was certainly not of a superior quality to any other creditor having a written promise to pay.

The promissory note of the plaintiff fell due on May 2nd, 1932. The defendants having failed to pay, an action at law was begun on May 13th, and, no defense being interposed, a judgment was obtained, at the earliest possible date, on June 29th, 1932, for $37,377.61. On June 23rd, 1932, Hudgins brought an action on his note of $28,500, which was executed on April 1st, 1932, but payable on demand, and, pursuant to the power to confess a judgment, the court entered a judgment on the confession on the same day in the sum of $28,889.50, and thereby was acquired the disputed prior lien. The priority was obtained because the debtors refused the plaintiff's request for a note payable on demand, and containing a power conferred upon the creditor to have entered a judgment by confession, and subsequently granted the request of Hudgins for a note of that tenor. If, in thus declining a remedy to one creditor and granting it to another, the express intention of the debtor and the favored creditor was to enable the one ultimately to obtain a priority in lien over the other with respect to their several *bona fide* rights of action, the debtor at most merely put it within the power of one creditor to obtain a preference over another; and such preference, if and when so obtained, is not fraudulent, and so is valid at common law. In the absence of a timely invocation of some appropriate rule of the insolvent or bankruptcy statute, an innocent creditor is entitled to maintain the preference so secured. While in this case no property was transferred, and no immediate lien was given, the case is within well-established principles and such illustrative cases as *Drury v. State Capital Bank*, 163 Md. 84, 88-91, 161 A. 176, and cases there cited.

As the court reads the record and finds the facts, the note and the judgment confessed thereon were not taken for more than was actually due at the time from the

debtors to the creditor, but was in every respect a *bona fide* transaction upon an equivalent consideration. The payment of a just debt is admitted by the law to be rightful, and is neither fraudulent in law nor in fact. As a necessary corollary to this rule, the giving of a written promise to pay a debt, with a power for a judgment by confession to be entered on default in payment, is neither fraudulent in law nor in fact. The following quotation is peculiarly applicable to the circumstances of this record, where the complaining creditor sought what the prevailing creditor later obtained:

"One creditor of a failing debtor is not, under the statute, bound to take care of the others. In such case, if the assets are insufficient to pay all, somebody must suffer. It is a race in which it is impossible for everyone to be foremost. He who has the advantage, whether he gets it by the preference of the debtor or by his own superior diligence, or by both causes combined, is entitled, under the statute, to what he wins, provided he takes no more than his honest due. He is not obliged to look out for other creditors, or to consider whether they will or will not get their debts. He does not violate any principle of the statute when he takes payment or security for his demand, though others are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims, and though he may be aware of the intent of the debtor to defeat the collection of them. Fraud, in its legal sense, cannot be predicated of such a transaction. Whenever there is a true debt, and a real transfer for an adequate consideration, there is no collusion." *Bump on Fraudulent Conveyances* (3rd Ed.) pp. 188, 189, and see pages 179-188; *Cole v. Albers,* 1 Gill, 412; *Bruce's Admrs. v. Smith,* 3 H. & J. 499; *Glenn v. Grover,* 3 Md. 212; *Id.,* 3 Md. Ch. 29; *Anderson v. Tydings,* 3 Md. Ch. 167; *Rich v. Levy,* 16 Md. 74, 79, 85; *Mayfield v Kilgour,* 31 Md. 240; *Totten v. Brady,* 54 Md. 170, 173; *Story's Eq. Juris,* (14th Ed.) sec. 498.

Since it is our conclusion that the judgment obtained by Hudgins is valid, and that the parties have elected

to enforce their respective judgments against the McFarlands as judgment liens on the property known as 3405 Garrison Avenue, which the debtors acquired by purchase from Hudgins as the trustee to sell under the Sowers mortgage, it becomes unnecessary to pass upon the other and alternative questions presented by the record.

Having found that the judgment of Hudgins is valid as entered, it is a prior lien to that obtained by Selwyn W. Marcus, the plaintiff in the pending cause, who therefore has no equity upon which his bill of complaint can be sustained.

*Decree reversed, and bill of complaint dismissed, with costs in Nos. 71 and 72 Appeals to be paid by Selwyn W. Marcus.*