# J. OTIS KENNARD ET AL. *v.* ELKTON BANKING & TRUST COMPANY

[No. 6, April Term, 1939.]

*Decided May 16th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*James F. Evans* and *Joshua Clayton,* for the appellants.

*William J. Bratton* and *James W. Hughes,* for the appellee.

SHEHAN, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Cecil County declaring a mortgage from J. Otis Kennard to his wife, Anna D. Kennard, for $15,000, and the assignment of two mortgages owned by him, to his wife, to be null and void, as against and to the extent of a certain judgment of the Elkton Bank and Trust Company against the said J. Otis Kennard. The suit was instituted by the bank under the authority of the statute of the 13th Elizabeth, *Alexander's British Statutes,* (Coe's Edition), page 499, 501, and also under the Uniform Fraudulent Conveyance Act, article 39B of the Code of Public General Laws, which in effect is declaratory of the British statute. These statutes were designed to render null and void conveyances made for the purpose of hindering, delaying and defrauding creditors. In this case the mortgage and assignments had been made by a husband to his wife, and consequently there arise certain implications and presumptions with respect thereto which place upon such parties, and especially upon the grantee and assignee, burdens not imposed on those who do not bear close relationship. These burdens grow out of the principle that the closest scrutiny is exercised to discover deceit, fraud, participation or connivance between the parties in such cases with respect to the transaction in question. For example, the burden is here placed upon the wife: First, to show that the conveyance or transfer of the property was made for a consideration recognized in law as being good and sufficient, and here is involved a determination as to the adequacy and

relative equality and fair proportion between the debt satisfied and the property conveyed. There is also the question of present or concurrent consideration, and pre-existing obligations, as a sufficient consideration to support the conveyance or transfer, and there is also involved the meaning of the term "fair consideration" as used in the statute, and of "good faith" as defined in the decisions, and their bearing upon and relation of one to the other, all of which become matter of importance herein. In the case of *Drury v. State Capital Bank,* 163 Md. 84, 161 A. 176, the entire question of consideration, in cases such as this, was considered at length, and the opinion by Judge Parke, supported by numerous citations, covers in detail every question raised in this record, and what is said in that case need not be repeated, but is adopted here because it applies with equal force to the facts here presented, and disposes of all questions relating to the consideration for the execution of the mortgage and assignments involved. To sustain a transaction such as this, the consideration must not only be of the character above defined, but the conveyance or transfer must have been made in good faith on the part of the grantee or assignee, and in this requirement there arises the difficult question here presented, and in its solution this case must be decided.

The facts and circumstances in the case, briefly and concisely stated, are; That these parties had been long married and lived together throughout the years of their married life. Mr. Kennard, before his marriage, was a conductor on a street car in an adjoining state and without means, but later became a man of prominence and useful in the life of the community in which he lived. Mrs. Kennard, before her marriage, had lived with her aunt Mrs. McClure, who was a woman of considerable means, and who had treated her as a daughter, and upon her death had left to her a large portion of her estate, amounting to approximately $30,000, and of this sum Mrs. Kennard, after her marriage, loaned to Mr. Kennard about $25,000, for which he had given, at the time of the

loan, and she had accepted, his notes. These obligations were outstanding and unpaid at the time the mortgage and assignments in question were made. Her ability to make these loans is not seriously questioned. These facts are established by decided preponderance of testimony, though all the details of each transaction are not clearly and concisely given by Mrs. Kennard, but, as she had for years largely entrusted her business affairs to her husband, this want of clarity and memory cannot be severely criticized or relied upon as a lack of good faith, nor as a failure in the discharge of the burden of proof that the law places upon her with respect to consideration and good faith. Other witnesses and numerous documents supported her testimony, and supply any deficiency in the burden that the law places upon her as a wife of the grantor and assignor. The sources of her fortune and her ability to make the loans were shown by the testimony of Mr. and Mrs. Kennard, and supported by record evidence. The actual making of the loans to her husband are evidenced by his notes given to her, and that these obligations were overdue and unpaid was testified to by both of these parties and not contradicted by any one or by any circumstances in the case.

J. Otis Kennard was possessed of valuable real and personal property, was active in business in the county in which he lived, and was apparently a prosperous man until 1930, when the calamitous depression and business conditions wrought his financial downfall, as it did that of thousands of others throughout the land. He was the owner of and operated a valuable farm located near Rising Sun in Cecil County, where he and his wife had lived for a long time, and which had been purchased by money loaned to him by her. He was a director in the Elkton Bank and Trust Company, the appellee in this case, whose failure contributed to his financial distress. As a director of this bank he was obligated, together with other directors, to become a guarantor of the bank in an endeavor to strengthen its financial position, in consequence of which he was compelled to pay some

$8000, which he borrowed from his wife. This, together with the money he had borrowed for the purpose of purchasing the farm where they lived, and other sums of money, amounted to approximately $25,000. The failure of this bank, his own financial losses, his son's failure and loss of position in the bank, must have been known to Mrs. Kennard. On the witness stand she did not deny knowledge of these facts and events, but on the contrary she said she was not favorable to Mr. Kennard giving his guaranty, that this was discussed, and that she "knew he was into it and would have to sign it, meaning the guaranty." She also knew of the payment of the $8000 on account of his guaranty. The bank had failed, with all of its distressing financial consequences.

Mrs. Kennard accepted from Mr. Kennard the mortgage and assignments on account of the long overdue obligations to her, knowing of his involvement with the bank and knowing that his other creditors would be prevented from recovering their debts in whole or in part by reason of the transfer of all of his property to her, thus rendering himself insolvent. In view of these facts and circumstances, would this preference, given to his wife, render the mortgage and assignments void under the statute? An examination of the authorities discloses that "independently of the bankruptcy and insolvent statutes, the law does not prohibit near relatives from giving preference to each other, when done, as we find in this record, *bona fide*, without fraudulent intent, and upon a fair consideration, although the grantor was, or thereby made himself, insolvent." This is the rule laid down in *Commonwealth Bank v. Kearns,* 100 Md. 202, 59 A. 1010, and followed with approval in *Drury v. State Capital Bank,* 163 Md. 84, at page 96, 161 A. 176, at page 181. The same doctrine is adhered to in *McCauley v. Shockey,* 105 Md. 641, at page 645, 66 A. 625, at page 626, where it is said, "by a long course of decisions, it has been settled that the fraud of the vendor does not vitiate a sale unless the vendee has participated in the fraudulent intent." Intent on the part of a grantor, mort-

gagor, or assignor to prefer one of his creditors does not avoid the conveyance as against the grantee, mortgagee, or assignee provided the latter acted in good faith, and the consideration was fair and adequate, even though it operated to secure to him a priority of the payment of his debts, and such intent or design will not avoid the conveyance even though the grantor be insolvent and the grantee has knowledge thereof. *Wareheim v. Bayliss,* 149 Md. 103, 107, 131 A. 27. Judge Johnson, in the case of *Smith v. First National Bank,* 173 Md. 481, at page 488, 196 A. 310, 313, has concisely stated the rule to be: "Aside from a statute of bankruptcy or insolvency, a debtor has a right to transfer in good faith and for a fair consideration, even though it consists of an antecedent indebtedness, all or part of his property to one creditor, although he is insolvent and such transfer hinders or delays his creditors."

In *Crane & Sons v. Barkdoll,* 59 Md. at page 534, it was said: "Although the existence of the debt due by the husband to his wife, and of the notes given therefor, may not have been known to parties dealing with and trusting the husband, and a long period intervened between the origin of the debt and the execution of the deed given to secure it, and the husband made no attempt to secure it otherwise than by his notes, until he had contracted debts, and found himself in failing circumstances, yet these facts, while they are enough to arouse suspicion and subject what the witnesses who state them say to careful scrutiny, they are not sufficient to justify the court in imputing perjury to the witnesses, by declaring their testimony to be substantially false, and that the notes were fabricated for the purpose of enabling the husband to cheat and defraud his creditors." See also *Marcus v. Hudgins,* 168 Md. 79, 87, 176 A. 271.

There was no deception, artifice and deceit practiced by Mrs. Kennard upon the creditors of Mr. Kennard. She seems to have done nothing but accept a payment on account of the just obligations that were due her, and this cannot be held to constitute fraud or bad faith on

her part. This leads us to the conclusion that the decree of the lower court should be reversed and that the bill of complaint be hereby dismissed.

*Decree reversed, and bill dismissed with costs to the appellants.*