MORTIMER C. TOTTEN, and others *vs*. JOHN C. BRADY, and others.

*Deed assailed for Fraud—Burden of Proof—What does and what does not constitute Fraud—Effect of want of Title with grantor.*

Where a deed is assailed for fraud as against creditors, the burden of proof is upon them to show that it was made without consideration, or if made upon a good consideration, it was executed by the grantor with a fraudulent intent, and that this intent was known to the grantee.

The fact that a grantor is embarrassed and in failing circumstances, will not render void a deed made by him to one creditor, to the exclusion of others, provided the deed be made in good faith in payment of an honest debt.

On a bill filed by creditors to set aside a deed made by their debtor, on the ground of fraud, the question in regard to the grantor's title to the property conveyed by him, is one of no importance to the complainants.

APPEAL from the Circuit Court for Washington County, in Equity.

This appeal was taken by the complainants from the decree of the Court below, (ALVEY, J.,) dismissing their bill. The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, ROBINSON, and IRVING, J.

*Wm. J. Read* and *Ferdinand Williams*, for the appellants.

*Robert H. Gordon* and *J. H. Gordon*, for the appellees.

ROBINSON, J., delivered the opinion of the Court.

The bill in this case was filed by the creditors of John C. Brady, to set aside two deeds made by him to his mother, Susan F. Brady, on the ground of fraud.

The deeds were executed on the 14th September, 1874, the one in consideration of ten thousand dollars, and the other in consideration of twenty-five thousand.

The burden of proof is upon the complainants to show that the deeds in question were made without consideration, or if made upon a good consideration, that they were executed by the grantor with a fraudulent intent, and that this intent was known to the grantee.

The fraudulent intent, and fraud of every kind is flatly denied by the defendants in their answers, and the proof in regard to it rests mainly on the testimony of the grantor and grantee, both of whom were examined as witnesses for the complainants.

It seems that Samuel D. Brady, the father of the grantor died in 1869, seized and possessed of a large and valuable real estate, the latter embracing the lands conveyed by the two deeds now assailed.

After sundry specific bequests and devises, the testator directed his executors, John C. Brady the grantor being one, to sell the rest of his estate, real and personal, and to distribute the proceeds among his children.

To his wife, Susan F. Brady, he gave the option to take $15,000 in lieu of her dower in the real and her thirds in the personal property, and should she elect to take $15,000, the executors were directed to pay the same out of the proceeds arising from the sale of his property.

The power of sale under the will was never executed, but in September, 1870, there was a family arrangement or settlement, whereby as part of that settlement, the lands mentioned in the two deeds now in controversy, were to be conveyed by the heirs to John C. Brady at a valuation of twenty-five thousand dollars.

This sum together with the valuation of the real estate taken by the other children, were charged to the executors in their administration account of February, 1871.

No part of the $25,000, being the valuation of the lands to be conveyed to John C. Brady under the family settlement, was paid by him, nor was he entitled to anything as distributee under the will, because the specific devise of the McNary farm and the amount due by him to his father, exceeded his distributive share.

In payment however of the $25,000 he assumed to pay to his mother the $15,000 which she had elected to take, and the balance of the $25,000 was to be paid to his sister Kate B. Randall, on account of her distributive share.

The testimony shows beyond all controversy that these amounts together with the amount due his nephew, Louis B. Randall, exceed the sums of $10,000 and $25,000, the consideration set forth in the deeds from John C. Brady to his mother, and which deeds are now assailed as fraudulent.

It also appears that in pursuance of the family arrangement, the children and heirs-at-law of Samuel D. Brady, on the 30th of September, 1870, executed a paper purporting to convey to John C. Brady the lands taken by him at the valuation of $25,000, and that this paper was delivered to Susan F. Brady, the mother, to be held by her until the payment by John C. Brady to her of the $15,000, and also the payment of whatever sums might be due Louis B. Randall in his own right and in the right of his mother Kate B. Randall, deceased.

Such then being the undisputed facts in the case, John C. Brady on the 14th of September, 1874, executed the two deeds now in question, by which he conveyed to his mother one tract of land in consideration of $10,000, and the other tract in consideration of $25,000, both tracts, however, being the same lands which he took under the family settlement, and in consideration of which he

assumed to pay to his mother $15,000, and the balance to his sister, Kate B. Randall. His mother at the same time, and as part of the consideration mentioned in the deeds, gave to John C. Brady, the grantor, her four promissory notes for the payment of $25,000, and these notes were then assigned by him to himself as guardian of Louis B. Randall. The object no doubt of these two deeds was to secure to Susan F. Brady the payment of the $15,000 due to her, and also the amount due by John C. Brady as guardian of his nephew, Louis B. Randall, although the deeds upon their face assume the character of an out and out sale of the property to the mother.

But in whatever aspect these deeds may be considered, whether as a direct sale to the grantee in consideration of the $15,000 due to her by the grantor and her four notes for the payment of $25,000, or whether as a declaration in trust for the payment of $15,000 to her, and as security for the payment of $25,000 due by the grantor as guardian of Louis B. Randall, in either aspect the consideration would be sufficient to support the deeds.

If this be so, then the only question is, whether they were executed with a fraudulent intent on the part of the grantor and grantee?

Now, although the parties may not have adopted the most direct mode of accomplishing their purposes, there is not a particle of evidence to prove a fraudulent intent.

The lands conveyed by the two deeds of September 14th, were the lands taken by the grantor under the family settlement, and in consideration of which he was to pay $25,000, in the following manner: $15,000 to his mother, and the balance to his sister on account of her distributive share, not one dollar of which was ever paid.

The fact that the grantor was embarrassed and in failing circumstances, would not render void a deed made by him to one creditor to the exclusion of others, provided the deed was made in good faith in payment of an honest debt.

Something was said in the argument about the deed of September 30, 1870, from the children and heirs-at-law of Samuel D. Brady to John C. Brady as being defectively executed, and it was questionable whether the interest of some of the grantors passed under it. This does not seem however to us a material question. Whatever interest the grantor John C. Brady had in the property, whether derived from the deed of September 30, or under the family settlement, or as heir-at-law of his father, was conveyed by him to his mother, and whether such conveyance passed to her a perfect title, or what steps may be necessary to take to perfect that title, are questions of no concern to these complainants, the creditors of the grantor.

The object of this bill is to set aside the deeds as fraudulent, and subject the property thereby conveyed, to the payment of the grantor's debts. If the deeds are not to be condemned as fraudulent, the question in regard to the grantee's title is one of no importance to the complainants.

For these reasons the decree below will be affirmed.

*Decree affirmed.*

(Decided 30th June, 1880.)