# JACOB S. McCAULEY *vs.* SAMUEL E. SHOCKEY et al.

### *Fraudulent Conveyances—Bona Fides of Grantee.*

The evidence in this case shows that while suits were pending against them, two brothers executed a mortgage, to secure an indebtedness, of their interest in certain real estate to their two sisters, who were tenants in common with them of the property; that the purpose of the mortgagors and the necessary result of the mortgage was to prevent the plaintiff in the suit from procuring satisfaction of the judgment he obtained, and that the mortgagees knew of this purpose and participated therein. Consequently the plaintiff is entitled to a decree annulling the mortgage because made and accepted for the purpose of delaying and defrauding him as a creditor, and providing for a sale of the interest of the mortgagors in the land.

When the grantee in a conveyance made for the purpose of defrauding the subsisting creditors of the grantor knows of that purpose and accepts the transfer with intent to aid in delaying or defrauding such creditors, the deed is fraudulent as to them, although a fair price was paid by the grantee for the property.

*Decided April 24th, 1907.*

Appeal from the Circuit Court for Washington County (KEEDY, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Charles D. Wagaman* and *Frank G. Wagaman,* for the appellant.

*J. Clarence Lane* and *Charles S. Little,* for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Washington County, in equity, dismissing a bill filed by the appellant, as plaintiff below, to set aside a mortgage from the appellees, Samuel and Abraham Shockey, to their sisters Susan and Ida Shockey. The mortgage was alleged to have

been made for the purpose of hindering, delaying and defrauding the appellant, as a creditor of the mortgagors, with the knowledge and participation of the mortgagees.

The material allegations of the bill of complaint are as follows. The appellant on April 2nd, 1904, instituted separate suits for slander against the appellees, Samuel and Abraham Shockey and recovered a judgment against Samuel for $466.66 and one against Abraham for $1,700. On the 9th of May, 1904, while the slander suits were pending, the defendants therein executed a mortgage upon all of their real estate to their sisters, Susan and Ida Shockey, to secure a pretended indebtedness to them upon promissory notes amounting to $11,700.45, in furtherance of an attempt on the part of the mortgagors, participated in by the mortgagees, to put the mortgaged property beyond the reach of the plaintiff and hinder, delay and defraud him in the collection of his said judgments. The mortgaged property was located in Washington County and consisted of the two brothers' undivided one-half interest in a farm of about one hundred and twenty-seven acres, fifty-five acres of mountain land and two houses in Hagerstown, all of which were owned in fee by the two brothers and their two sisters as tenants in common. Prior to the making of the mortgage the brothers and sisters occupied the farm as a home and rented out the two houses and they thereafter continued to use and occupy all of the properties in the same manner that they had done before the mortgage was made. The mortgage indebtedness greatly exceeded the value of the interest in the said property owned by the mortgagors and they were without other resources except a small amount of personal property which was insufficient to satisfy the plaintiff's judgments.

The prayer of the bill was for a decree setting aside the mortgage and directing a sale of the interests of Samuel and Abraham Shockey in the property described in the mortgage and the application of the proceeds thereof to the payment respectively of the plaintiff's judgments and for further relief.

The Shockey brothers and sisters, the present appellees,

jointly answered the bill admitting their ownership of the real estate mentioned in the bill as tenants in common, the recovery by the plaintiff of the judgments against the brothers and the making by them of the mortgage of their interests in the real estate to their sisters.    They jointly and severally denied that the mortgage was made for a false or pretended consideration or for the purpose on the part of either the mortgagors or mortgagees of hindering, delaying or defrauding the plaintiff in collecting his judgments, but averred that it was made solely for the *bona fide* purpose of securing the indebtedness therein mentioned which was asserted to be an actual and subsisting obligation on the part of the brothers to the sisters.   This answer was excepted to by the plaintiff on the ground that it did not fully answer the allegations of the bill that all of the defendants at and prior to the making of the mortgage occupied and were in possession of the farm and rented the other real estate out to tenants and that since the making of the mortgage the defendants continued to occupy and use the mortgaged property as they had theretofore done; or the allegations that the mortgage conveyed all of the real estate owned by the brothers and that they were without other property or means from which the plaintiff's judgment could be realized.    An amended answer was then filed by the defendants jointly in which they admitted the allegations referred to in the plaintiff's exceptions, but neither the original or amended answer disclosed the nature or details of the transactions out of which the alleged mortgage indebtedness arose.

The evidence in the record shows that the mortgaged farm had for many years constituted the family home of the defendants.    Their father, David Shockey, died in 1875 leaving the farm and the mountain land to his wife with remainder to his children of whom the appellees are the survivors.   The four appellees, all of whom are unmarried, acquired the interests of the other children in the farm and, since the death of their mother, in 1886, lived together upon it and operated it for their joint account.   They usually cultivated the farm themselves but they sometimes let out the land to tenants who

worked it on shares.   At intervals of a year or longer the
brothers and sisters had settlements with each other and ad-
justed the state of accounts between them and notes bearing
interest were given for the balance, thus ascertained.   The
sisters, who seem to have been very industrious, also engaged
in certain pursuits on their own account.   They kept cows
and raised chickens and sold butter and eggs and evaporated
peaches and occasionally took boarders and also at times took
in sewing.   The one sister, Susan, testified that from 1876 to
1886 their average annual receipts from evaporated fruit were
from $90 to $130 and from 1887, when they had gotten a
hot air evaporator, to 1896 their earnings were from $350 to
$468 per year.   The brothers and sisters all testified with
some measure of detail that the promissory notes secured by
the mortgage represented the total amount of various loans,
with interest thereon that had been made to the brothers by
their sisters during a period of twenty or more years.

In 1888 the appellees, as tenants in common, purchased
one of the two mortgaged houses in Hagerstown for $2,500
and in 1892 they purchased the other one for $1,600, they
also purchased $700 of Hagerstown Drainage Bonds for their
joint account.   Prior to the institution of the slander suits in
which the judgments were rendered against the two brothers
they had a bank account in their names as Shockey Brothers
with Eavy, Lane & Co. in Hagerstown, and a similar one with
the Peoples' Bank of Waynesboro.   The aggregate value of
the farm, mountain land and the two houses in Hagerstown
was about $13,000 so that the half interests therein covered
by the mortgage was worth approximately $6,500.

It further appears from the evidence that, not only was the
mortgage executed after the institution of the slander suits in
which the judgments were recovered against the mortgagors,
but at or about the same time the Hagerstown Drainage
Bonds were sold, and the bank accounts standing in the name
of the mortgagors were both closed out, and their share of the
farm was leased for a money rent to their sisters who could at
any time retain the rent and apply it on account of the debt

due to them and thus defeat any attempt of the plaintiff to recover, by an attachment issued on his judgments.    By these transactions the two Shockey brothers stripped themselves of all property which could have been resorted to by the plaintiff for satisfaction of his judgments against them.

The natural and inevitable result of these transactions of the two brothers being to hinder, delay and defraud the plaintiff, in respect to the collection of his judgments against them, the normal presumption of innocence on their part is overthrown and they are chargeable with the intent to produce that result and the mortgage, must so far as they are concerned, be regarded as fraudulent.    The law conclusively presumes every man to intend the necessary and even the probable consequences of an act deliberately done.    *Gardner* v. *Lewis*, 7 Gill, 404; *Whedbee* v. *Stewart*, 40 Md. 424; *Ecker* v. *McAllister*, 45 Md. 309; *Lineweaver* v. *Slagle*, 64 Md. 489; *Gebhart* v. *Merfeld*, 51 Md. 325; *High Grade Brick Co.* v. *Amos*, 95 Md. 599.

The radical question in the case is whether the mortgage is to be considered fraudulent as against the mortgagees and upon that issue the burden of proof is primarily upon the appellant who as creditor assails its validity.    *Crook* v. *Brydon*, 93 Md. 643; *Fuller* v. *Brewster*, 53 Md. 358–9; *Cooke* v. *Cooke*, 43 Md. 522.    The mere proof of an intent on the part of a mortgagor to hinder, delay or defraud his creditors will not avoid the mortgage as against the mortgagee if the latter act in good faith in taking it even though it operates to secure to him a priority in the payment of his debt.    In *Smith* v. *Pattison*, 84 Md. 344, we said "By a long course of decisions it has been settled that the fraud of the vendor does not vitiate a sale unless the vendee has participated in the fraudulent intent.    *Cooke* v. *Cooke*, 43 Md. 533; *Fuller* v. *Brewster*, 53 Md. 359; *Totten* v. *Brady*, 54 Md. 170, and many other cases."    In the latter cases of *Crooks* v. *Brydon*, 93 Md. 643, and *Commonwealth Bank* v. *Kearns*, 100 Md. 207, the rule is said to be that when the conveyance is regular on its face it is incumbent on those attacking it to show either that it was not made

upon a good consideration or that it was made with a fraudulent
intent upon the part of the grantor to hinder, delay or de-
fraud his creditors and that this intent was known to or par-
ticipated in by the grantee.    The rule is similarly stated, upon
the authority of many cases there cited, in *A. & E. Encyl. of
Law*, 2 ed., vol. 14, p. 270, and in the copious and valuable
notes to *Feder* v. *Ervin*, 36 L. R. A. 335, and *Rice, Stix &
Co.* v. *Wood et al.*, 31 L. R. A. 608.    Some authorities go so
far as to hold that even if the grantee creditor has knowledge
that the effect of the conveyance and the intent of the grantor
are to delay or defraud other creditors the title of the grantee
will not be vitiated if he acts in good faith and does not par-
ticipate in the fraudulent intent of the grantor.    20 *Cyc.*, 470-
475, and cases cited in notes to *Feder* v. *Ervin* and *Rice et al.*
v. *Wood et al.*, *supra*.

From the nature of the case, a creditor attempting to set
aside a conveyance as fraudulent can seldom prove as an inde-
pendent fact the knowledge of or participation in the fraud of
the grantor by the grantee.    That knowledge or participation
must be gathered from the various facts and incidents com-
posing the transactions and its environment.    The primary
presumption here as elsewhere is in favor of innocence and
good faith, but a state of facts may be shown which will neg-
ative that presumption and cast upon the grantee the burden
of proving his good faith and non-participation in the fraudu-
lent purpose of the grantor.

The circumstances shown by the evidence in this case to
have surrounded the execution of the mortgage to the two
sisters were such in our opinion as to negative the presump-
tion of good faith on their part and call for frank disclosure and
full proof of all of their dealings in connection with that trans-
action.    They had for years been living in the same house and
eating at the same table with 'their brothers.    The four had
conducted their farm and rented their houses for joint account,
and had frequent settlements with each other.    The sisters
had through a long period made successive loans to the
brothers, to an amount in the aggregate far greater than the

total value of all the property of the latter, and must have had constant cause to ascertain and consider the brothers' financial condition and responsibility.  In the simplicity of that rural home so exciting a subject as threatened or pending slander suits against the brothers and the possible effect upon them of an adverse result of the suits, and the ways and means of providing against such a misfortune must have formed the theme of current discussion at the common fireside and table.

In that situation it was incumbent upon both the brothers and sisters, and especially upon the latter as the parties claiming under the impeached mortgage, to have given in their answers to the bill in the present case frank, clear and full explanations of their dealings with each other. *Hinman* v. *Silcox*, 91 Md. 576–585.  This they failed to do.  They made common cause in their answers and jointly denied any intent on the part of either the brothers or sisters to put the property of the latter beyond the reach of the plaintiff for the satisfaction of his judgments.  They did not disclose fully or at all their dealings with each other in relation to the execution of the mortgage or the contracting of the debt which it was intended to secure but contented themselves with a denial that the mortgage was fraudulent and an assertion that it was made to secure a *bona fide* indebtedness existing at the time of its execution and for no other purpose.  The filing by the plaintiff of exceptions to the original answer was required in order to secure from the defendants a direct response to several material allegations of the bill already referred to by us.

Again the evidence shows that the sisters participated in some of the other measures adopted by the brothers to complete the withdrawal of their property from the plaintiff's reach.  The leasing by the brothers of their interest in the farm to the sisters for a money rent, at or about the time of the bringing of the slander suits and making of the mortgage, could not have been consummated without the concurrence and co-operation of the sisters.  The significance of that transaction is too great to be disregarded.  Samuel Shockey testified in the case when asked who had conducted the bus-

iness after his father's death and his mother quit farming, "My brother Abe and I superintended the farm altogether," and when asked, on cross-examination, "In what business are Shockey Bros. now engaged," he replied "Superintending the farm up there," and when asked "What farm" he said "the home farm" and further said that they were now managing it for their two sisters Sue and Ida. It also appears from the testimony of Ida Shockey, one of the two sisters, that although they have rented the two brothers' share of the farm, all four of them continued to reside upon it as one family and draw their sustenance from it as they have always done. This acceptance by the sisters of the mortgage and lease of the brothers' interest in the farm, while the latter continue to live upon and manage it as before, strongly indicates a purpose on their part, to assist the brothers to retain its enjoyment while withholding it from liability to the plaintiff's judgments, which should not receive the sanction of a Court of equity.

The sale of the Hagerstown Drainage Bonds, owned jointly by the brothers and sisters, at or about the time of the institution of the slander suits must also have required the authority or assent of the sisters unless the sale was made without their knowledge, which has been suggested by no one.

Hubert Detrow and Edward McCauley, both disinterested witnesses, testified positively that during the trial of the slander suit against Samuel Shockey at Hagerstown, they were engaged in a conversation in the Court House when they overheard the Shockey sisters say in talking to each other that they expected to lose the suit but it did not make any difference as they had fixed it so that he would not get anything anyhow. Both witnesses ascribed to Susan Shockey the statement that she expected the suit to be lost and to Ida Shockey the reply that it did not make any difference that they had fixed it so that he would not get anything anyhow. Both of the sisters testified that Ida had not been in Hagerstown at all during that trial and two other witnesses Mrs. McCarter and Mrs. Spencer each testified that she had been present during the trial of the case at Hagerstown and had not seen

Ida Shockey there. Jennie Spencer testified that she had been with Ida Shockey at her home on the farm during the trial but could not say exactly how long she had been there. As against this evidence six other witnesses each testified affirmatively to having seen Ida Shockey at that trial during at least one day. The preponderance of this testimony favors the assertion of the plaintiff's witnesses that the alleged conversation between the sisters at the Court House in Hagerstown did occur. But be that as it may, in view of the family connection, daily intercourse and intimate relations financial and personal existing between the Shockey brothers and sisters, and the undoubted co-operation of the sisters in some portions of the attempt of the brothers to place their property beyond the plaintiff's reach, we are unable to concur in the conclusion of the learned Judge below that the sisters accepted the mortgage without knowledge of their brothers fraudulent intent or participation in its consummation. The sisters were doubtless actuated by a desire to promote what they regarded as their brothers welfare and safety in assisting them to cover up their property but the evidence does not satisfy us that they took the mortgage solely for the purpose of securing their own claims without reference to the promotion of their brothers covinous designs.

We have adverted in the earlier part of this opinion to the evidence appearing in the record touching the making by the sisters to the brothers of the alleged loans for the security of which the mortgage in question was given. We deem it unnecessary to pass upon the weight of that evidence or the sufficiency of the consideration for the mortgage because we have derermined that the mortgage must be declared void as against the plaintiff's judgments because of the mortgagee's knowledge of and participation in the fraudulent purpose of the mortgagors in executing it. To sustain a mortgage made to secure creditors by a debtor in the condition of the mortgagors in this case it is essential to establish both a sufficient consideration and a *bona fide* execution. The absence of either one of those two elements will be sufficient to avoid the

mortgage in favor of existing creditors.    In *Chatterton* v. *Mason*, 86 Md. 240, we said: "The *bona fides* of the transfer of property is as much a subject of inquiry in a case of this character as the consideration.    If it be established that the deed was made by the grantor and accepted by the grantee with the intent to hinder, delay or defraud the creditors of the former it matters not that a full consideration has been paid."

The appellant is entitled to a decree declaring the mortgage before us void as to his judgments, and directing a sale of the undivided interests of the several brothers in the mortgaged property or so much thereof as may be necessary for the respective satisfaction of his judgments and the costs of this suit.    To that end we will reverse the decree appealed from and remand the case for further proceedings in accordance with this opinion.

> *Decree reversed with costs and case remanded.*