## BERGER, ET UX. *v.* HI-GEAR TIRE AND AUTO SUPPLY, INC.

[No. 323, September Term, 1969.]

*Decided April 2, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John T. Bell,* with whom were *Charles W. Bell* and *Bell & Bell* on the brief, for appellants.

*Thomas A. Lohm* for appellee.

SMITH, J., delivered the opinion of the Court.

We are here involved with the propriety of the action of a trial judge (Pugh, J.), sitting in equity, in setting aside a deed of trust as a fraud on creditors. We shall affirm the action of the chancellor.

Bernard and Bernice Berger entered the automobile accessory business in the summer of 1965. They did so under a franchise from appellee, Hi-Gear Tire and Auto Supply, Inc. (Hi-Gear). Credit was extended by Hi-Gear. A financial statement was submitted to Hi-Gear signed by Bernard Berger prior to this extension of credit. The business did not prosper. Two stores were opened, one in Montgomery County, Maryland, and one in Arlington, Virginia. The Maryland store was closed in December, 1966, and the merchandise moved to Virginia. Hi-Gear sued Mr. and Mrs. Berger on December 30, 1966, in the Circuit Court for Montgomery County. They were served on January 12, 1967. Judgment was entered in favor of Hi-Gear against Mr. and Mrs. Berger in the amount of $10,760.91 in March of 1967.

While the Hi-Gear—Berger litigation was in progress, a second lien, a deed of trust, was placed on record

against the home of Mr. and Mrs. Berger. It was dated January 3, 1967, acknowledged January 30, 1967, with affidavit of consideration likewise executed on January 30, 1967. It purported to secure payment of an alleged indebtedness of $17,500.00 from them to Louis Schwartz, the father of Mrs. Berger.

Hi-Gear filed a bill of complaint under Code (1957), Art. 39B, § 7 to have this deed of trust declared invalid. Reference was made in the bill of complaint to the financial statement of July, 1965, and the fact that no indebtedness to Schwartz was there listed. Parties defendant were Mr. and Mrs. Berger, Mr. Schwartz and the trustees. No active opposition was presented by the trustees.

Although an answer was filed on his behalf by the same attorneys who represented Mr. and Mrs. Berger, Schwartz did not testify relative to any indebtedness from Mr. and Mrs. Berger to him. In fact, a subpoena issued by Hi-Gear to require his attendance at the trial of this case was returned *"non est"*. Mr. and Mrs. Berger are appellants here. No appeal was entered on behalf of Schwartz or the trustees.

Mr. Berger testified that the deed of trust was to secure his father-in-law for advances made to him "over many years", running "back to the beginning of [the] marriage" of Mr. and Mrs. Berger. At the time of trial they had been married 25 years. No written evidence of the indebtedness was presented. At one point Berger was interrogated by the court and the record is as follows:

"THE COURT: In other words, this $17,500 is an accumulation of loans he made to you?

"THE WITNESS: Yes, sir.

"THE COURT: Did he give you the money or did you borrow it?

"THE WITNESS: We asked if he would just give it to us.

"THE COURT: Did you execute a promissory note for any of it?

"THE WITNESS: No, sir.

"THE COURT: Did you pay any interest on it?

"THE WITNESS: No, sir.

"THE COURT: Was the money loaned to you, loaned to you or your wife, or to you and your wife?

"THE WITNESS: Just to me.

"THE COURT: Your wife was not named in the transaction at all?

"THE WITNESS: No, sir.

"THE COURT: In other words, isn't it a fact that you knew you were about to have a judgment entered against you and you wanted your father-in-law to get ahead of that judgment?

"THE WITNESS: No, sir, I wouldn't say that was the reason. When I went out of business I saw another attorney and I told him that things were going badly with me. I owed my father-in-law. I felt he should have some sort of preference if there's any money.

"THE COURT: That's why you executed the trust to your father-in-law for preference?

"THE WITNESS: Preference; well, I would suppose it would be preference.

"THE COURT: You wanted to prefer him against any of your other creditors?

"THE WITNESS: No, sir. First preference, not final preference."

Mrs. Berger did not testify. The only evidence offered relative to the indebtedness from Mr. Berger to Mr. Schwartz was Mr. Berger's testimony.

The Berger home is owned as tenants by the entireties. Berger declined at the trial to give a value for the property although in the financial statement he placed a $29,000.00 value on it. He did testify that the parties paid "either $25,000.00 or $23,500.00" for it in 1960. It is the subject of a mortgage on which, according to Berger's testimony, a balance of $18,000.00 to $19,000.00 remained due at the time of trial.

Appellants contend that they were not made insolvent by the placing of the second lien on their home. Mr. Berger's testimony in this regard is not exactly a model of precision. He claimed not to know the meaning of the word "assets" when asked what assets this deed of trust left unencumbered. He gave no testimony as to any bank account he might have had at that time. He admitted, however, that when questioned under supplementary proceedings on August 31, 1967, he said that he had as of that date "maybe $15.00 in the bank", that he had no securities and no assets which could be attached.

The assets which he testified to having owned in addition to the home at the time of the execution of the deed of trust in January of 1967 were a 1965 Pontiac and the stock-in-trade in the store in Arlington, Virginia. As to the Pontiac he said, "I don't know the value of it." It was originally financed for $1800.00 on a three-year basis. There was some testimony indicating that at the time of trial there might have been $1100.00 due on it. Whether this car was owned by Berger or by Mr. and Mrs. Berger does not appear—nor seem important. He claimed that he sold the merchandise in the Virginia store "in February or March" of 1967. In response to an inquiry as to whether or not he paid anybody he owed with the proceeds, he said, "Well, I paid my attorney for some fees that I owed him and probably some back debts I might have accrued through normal living expenses." He admitted to a judgment against him in the amount of $5238.00 in favor of Central Leasing Company. The date of entry of that judgment does not clearly appear. It apparently concerned merchandise or shelving for one or both stores. Berger also testified to an indebtedness in the amount of $11,000.00 to Small Business Administration.

There was no testimony as to assets of Mrs. Berger nor does it clearly appear which, if any, of the previously mentioned items of indebtedness were owed by Mrs. Berger.

We approach our evaluation of this case bearing in

mind Maryland Rule 886 a to the effect that the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. We also bear in mind that the burden of proof is on the party assailing the transaction, *Totten v. Brady*, 54 Md. 170, 171 (1880), and *Cooke v. Cooke*, 43 Md. 522, 532 (1876). Also, it has been said that absent the bankruptcy and insolvency statutes the law does not prohibit near relatives from giving preference to each other when done bona fide without fraudulent intent and upon a fair consideration, although the grantor was, or thereby made himself, insolvent. *Smith v. First Nat. Bank*, 173 Md. 481, 488, 196 A. 310 (1938); *Drury v. State Capital Bank*, 163 Md. 84, 96, 161 A. 176 (1932); *Commonwealth Bank v. Kearns*, 100 Md. 202, 208, 59 A. 1010 (1905). Even if the grantor has a fraudulent intent, this will not vitiate or impair a conveyance unless the grantee participates in the fraudulent intent. *Long v. Dixon*, 201 Md. 321, 323, 93 A. 2d 758 (1953); *Kennard v. Banking and Trust Co.*, 176 Md. 499, 503, 6 A. 2d 258 (1939); *McCauley v. Shockey*, 105 Md. 641, 645, 66 A. 625 (1907).

It is well established in this State that facts and circumstances may be such as to shift the burden to the grantee to establish the bona fides of the transaction. *Long v. Dixon, supra; Kline v. Inland Rubber Corp.*, 194 Md. 122, 138, 69 A. 2d 774 (1949); *Kennard v. Banking and Trust Co., supra; Drury v. State Capital Bank, supra;* and *McCauley v. Shockey, supra.* In the latter case our predecessors said:

> "From the nature of the case, a creditor attempting to set aside a conveyance as fraudulent can seldom prove as an independent fact the knowledge of or participation in the fraud of the grantor by the grantee. That knowledge or participation must be gathered from the various facts and incidents composing the transactions

and its environment. The primary presumption here as elsewhere is in favor of innocence and good faith, but a state of facts may be shown which will negative that presumption and cast upon the grantee the burden of proving his good faith and non-participation in the fraudulent purpose of the grantor." *Id.* at 646.

It is to be specifically noted that although both Mr. and Mrs. Berger were indebted to Hi-Gear, Mrs. Berger was not indebted to her father to whom the deed of trust was given on real estate owned by Mr. and Mrs. Berger as tenants by the entireties. An antecedent debt of the grantor or mortgagor is fair consideration under Art. 39B, but not an antecedent debt of a third person. *Kline v. Inland Rubber Corp., supra,* at page 138; *Merchants Bank v. Page,* 147 Md. 607, 609, 128 A. 272 (1925). The deed of trust here on land held as tenants by the entireties was to secure payment of the antecedent debt of one spouse when both spouses were indebted to Hi-Gear.

Relative to indicia or badges of fraud 37 Am.Jur.2d, *Fraudulent Conveyances,* § 10 (1968) states:

"The facts which are recognized indicia of fraud are numerous, and no court could pretend to anticipate or catalog them all. Among the generally recognized badges of fraud are the insolvency or indebtedness of the transferor, lack of consideration for the conveyance, relationship between the transferor and the transferee, the pendency or threat of litigation, secrecy or concealment, departure from the usual method of business, the transfer of the debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property.

"Although it has been said that a single badge of fraud may stamp a transaction as fraudulent, it is more generally held that while one circumstance recognized as a badge of fraud may not

alone prove fraud, where there is a concurrence of several such badges of fraud an inference of fraud may be warranted."

The chancellor quite properly concluded that the suspicious circumstances here shifted the burden to Mr. Schwartz to justify the deed of trust. He noted:

"Despite the fact that he was a party to the suit with full notice of the hearing, the defendant, Louis Schwartz (Grantee) chose not to appear or offer any evidence in support of his claim. The only evidence of consideration was Berger's self-serving testimony that he gave the instrument to secure past loans."

On this record we cannot say that the chancellor was clearly in error in concluding that Mr. Schwartz as the beneficiary of the deed of trust had not met the burden of proof imposed upon him under the prior holdings of this Court.

*Decree affirmed; appellants to pay the costs.*