# BECCIO *v.* TAWNMOORE APARTMENTS, INC., ET AL.

[No. 303, September Term, 1971.]

*Decided April 7, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Carl A. Durkee* for appellant.

*Wm. Taft Feldman,* with whom were *Stephen M. Ehudin* and *Needle, Ehudin & Schwarz* on the brief, for Herman Feldman et al., part of appellees. No brief filed on behalf of other appellee.

SMITH, J., delivered the opinion of the Court.

Appellant, Matthew Lee Beccio (Beccio), is a judgment creditor of appellee Tawnmoore Apartments, Inc. (Tawnmoore). He attempted, unsuccessfully, in the Circuit Court for Baltimore County to set aside as a fraud on creditors a conveyance by Tawnmoore to appellees Herman Feldman and Fannie Feldman, his wife. We shall affirm.

Beccio raises a number of points, but they may be condensed into two questions, (1) whether the chancellor erred in concluding that there was an adequate consideration for the conveyance which was attacked and (2) whether the conveyance is defective as to creditors because of tardy compliance with Code (1957, 1971 Cum. Supp.) Art. 23, §§ 66, 70 pertaining to sale of "all or substantially all the property and assets of a corporation of this State."

Tawnmoore was the creature of Morton W. Feldman (Morton), son of Herman (the father) and Fannie Feldman (the parents). He owned 98% of the stock (98 shares). His father and wife each owned one share. As its name implies, the principal asset of Tawnmoore was an apartment house. Morton owned stock in other cor-

porations. He was in substantial financial difficulty. It was actually out of work done for others of Morton's corporations that Beccio ultimately obtained a judgment here against Tawnmoore, the details of which we need not relate.

Beccio here attacks the deed made by Tawnmoore on June 24, 1968, to the parents, said to have been for a consideration of approximately $191,000.

We recently have had occasion in *Berger v. Hi-Gear Tire & Auto,* 257 Md. 470, 263 A. 2d 507 (1970), and *Lacey v. Van Royen,* 259 Md. 80, 267 A. 2d 91 (1970), to review the Maryland authorities relative to the Uniform Fraudulent Conveyance Act (Code (1957) Art. 39B). In *Lacey* we quoted Judge Delaplaine in *Savings Bank v. Sauble,* 183 Md. 628, 632, 39 A. 2d 862 (1944), to the effect that the Uniform Act is declaratory of the common law and is practically a restatement of the statute of 13 Elizabeth, Chapter 5. In *Berger* we pointed out:

> "[I]t has been said that absent the bankruptcy and insolvency statutes the law does not prohibit near relatives from giving preference to each other when done bona fide without fradulent intent and upon a fair consideration, although the grantor was, or thereby made himself, insolvent. [Citing cases.] Even if the grantor has a fraudulent intent, this will not vitiate or impair a conveyance unless the grantee participates in the fraudulent intent. [Citing cases.]" *Id.* at 475.

In our review of this case we shall consider the evidence and the inferences to be drawn therefrom in the light most favorable to the side that prevailed below, since under Maryland Rule 886 we will not in an action tried without a jury set aside the judgment of the lower court on the evidence unless clearly erroneous and due regard must be given to the opportunity of the lower court to judge the credibility of the witnesses.

In this case there was conflicting testimony as to the

value of the apartment house owned by Tawnmoore. The estimates of value ranged from $170,000 through $191,-000 up to $200,000, the latter of which it was said was the value placed on it by Morton. The chancellor was not overly complimentary in his comments relative to Morton and his conceptions of value. He found as a fact that the estimate of $170,000 was closer to the true worth than "anything else."

The chancellor found that the transfer to Morton's parents was made in consideration of the sum of $191,-441.40. This was made up of the assumption of three mortgages totaling $166,237.07 and an indebtedness from Morton individually to the parents in the amount of $15,204.33, or $181,441.40. The settlement sheet then showed $10,000 in cash paid in excess of that, thus arriving at the figure of $191,441.40. The settlement sheet showed after deduction of one-half the cost of state stamps, one-half the local transfer tax and an attorney's fee that there remained due the sum of $7,760.75 from the parents to Tawnmoore. It was established that less than 10 days prior to the settlement the father had actually advanced the sum of $8,000 to Tawnmoore which was deposited in Tawnmoore's account.

The chancellor went to some lengths to justify the sum of $15,204.33 in the consideration which was a prior indebtedness of Morton to his parents. It was not an indebtedness of Tawnmoore. In the view we take of this case that makes no difference because if that sum were to be ruled out as a valid consideration, it still would leave the parents paying $176,237.07 or $6,237.07 in excess of what the trial judge found to be the fair market value of the apartment house.

The fact that the $7,760.75 due Tawnmoore at settlement was not paid but was considered to be the $8,000 advanced to Tawnmoore about 10 days previously which Tawnmoore in turn advanced to some other corporation fails to make the transaction invalid since an antecedent debt of the grantor or mortgagor is fair consideration

under Article 39B. *Berger v. Hi-Gear Tire & Auto,* 257 Md. 470, 476, and *Kline v. Inland Rubber Corp.,* 194 Md. 122, 138, 69 A. 2d 774 (1949).

Beccio contends mightily for a value of $200,000 and against the bona fides of the consideration. The short answer is that Judge MacDaniel was the trier of fact and there was evidence to support his conclusions. The variation between the consideration reflected in the stamps and what we conclude to be the bottom figure as to value passing to Tawnmoore is of no significance in the light of *Long v. Dixon,* 201 Md. 321, 93 A. 2d 758 (1953), where no revenue stamps were affixed to deeds to sons but the consideration moving from sons to parents was shown.

The action was instituted on June 20, 1969. It was not until September 11, 1969, that Tawnmoore got around to obeying the mandate of Code (1957, 1971 Cum. Supp.) Art. 23, §§ 66, 70 which required the execution and filing of articles of sale since the sale in question constituted a transfer of "substantially all the property and assets" of Tawnmoore. Beccio points to our decisions in *Isle of Thye Land Co. v. Whisman,* 262 Md. 682, 279 A. 2d 484 (1971) ; *Downing Dev. Corp. v. Brazelton,* 253 Md. 390, 252 A. 2d 849 (1969) ; and *Prince George's Club v. Carr,* 235 Md. 591, 202 A. 2d 354 (1964), and contends that the transfer was ineffective. In none of those cases was there a creditor attacking the transfer as a fraudulent conveyance, nor was there a subsequent formal approval by stockholders and recordation of articles of transfer as required by the statute. In *Isle of Thye* a contract with an individual had been assumed by Isle of Thye which then transferred its assets to another corporation without compliance with the statute. The person benefited under the original contract was seeking payment. We held compliance with the statute was necessary for any effective sale and said Isle of Thye remained liable. We went on, however, to hold the transferee corporation bound because of the provisions of Code (1957) Art. 23,

§ 72 (2) as in effect on the day of transfer and also because the transferee corporation assumed the obligation. In *Downing* a non-stock corporation refused to perform a contract, claiming there had been no approval by its members as required by the statute. We held its refusal to perform for that reason justified. In *Prince George's Club* a broker sued for his commissions on a sale where the membership of a club refused to give approval to the contract of sale when the matter was presented to them in accordance with the statute. This Court held that when the contract specified payment at settlement the broker in effect agreed "that it would get no commission unless the stockholders of the Club approved the sale as effectively as if that proviso had been written in the contract in so many words."

Relative to a statute such as this Mr. Justice Roberts said for the Supreme Court of the United States in *Royal Ind. Co. v. Amer. Bond Co.*, 289 U. S. 165, 53 S. Ct. 551, 77 L. Ed. 1100 (1933) :

> "The question is purely one of the internal management of the corporation. Creditors have no standing to plead statutory requirements not intended for their protection. If the stockholders' rights had been infringed, and they chose to waive them, a creditor could not assert them in opposing an adjudication [as a bankrupt]." *Id.* at 171.

In *United States v. Jones*, 229 F. 2d 84, 58 A.L.R.2d 778 (10th Cir. 1955), *cert. den.* 351 U. S. 939, 76 S. Ct. 835, 100 L. Ed. 1466 (1956), the court said:

> "Under the great weight of authority, statutes requiring numerical stockholder approval of a mortgage or transfer of substantially all of the corporate assets are 'for the protection of the stockholders and have nothing to do with the interests or rights of creditors.' " *Id.* at 86.

citing *Royal Ind. Co.* To the same effect are *Greene v.*

*Reconstruction Finance Corporation,* 100 F. 2d 34, 36 (1st Cir. 1938), and *George H. Gilbert Manuf. Co. v. Goldfine,* 317 Mass. 681, 686, 59 N.E.2d 461 (1945), to mention but a few cases. See in this regard annotation "Who may assert invalidity of sale, mortgage, or other disposition of corporate property without approval of stockholders," 58 A.L.R.2d 784 (1958).

For purposes of this case we need go no further than to hold that where a transfer at the outset had the consent of 99% of the stockholders (Morton's 98 shares plus his father's one share equaled 99%), where the formal articles of transfer have since been executed and recorded, and where the Maryland statute, as Judge Menchine pointed out in ruling on motion for summary judgment, has imposed no time limitation for compliance, a creditor will not be heard to attack the tardy compliance.

*Judgment affirmed; appellant to pay the costs.*