534 A.2d 1365
**Rufus S. WATSON, Jr., et al.**
v.
**Stacey Sue WATSON, et al.**
**No. 77, Sept. Term, 1987.**
Court of Special Appeals of Maryland.
Jan. 11, 1988.

James E. Tompert (Dale A. Cooter and Cooter & Gell, on the brief), Washington, D.C., for appellants.

Joseph F. Cunningham, Washington, D.C. (Arthur G. House and Hadley & House, on the brief, Bethesda), for appellees.

Argued before WEANT, GARRITY and POLLITT, JJ.

GARRITY, Judge.

In addition to reviewing the trial court's determination that certain property was fraudulently conveyed by the appellants to prevent the collection of a judgment, we shall examine the award of attorney fees against counsel.

## Facts

On May 14, 1980, the appellee, Stacey Sue Watson (Stacey) obtained a judgment in the amount of $1,769.00 against her former husband, the appellant Rufus S. Watson, Jr. (Rufus) in the District Court of Maryland for Prince George's County.[1] When the judgment remained unpaid, Stacey's attorney, Arthur G. House (House), conducted supplemental proceedings pursuant to the judgment. During the course of the supplemental proceedings, Rufus showed House a deed dated November 29, 1979, which purported to convey residential property titled solely in Rufus's name to Rufus and his present wife, Teresa S. Watson (Teresa), as tenants by the entireties. House, however, noticed that the "deed" lacked an acknowledgement. As a result, House caused a writ of *fieri facias* to be levied on the appellant's property.

---

1. The judgment was awarded on the appellants' failure to satisfy the completion of a divorce settlement agreement to pay the appellee her equitable interest in the marital home.

On June 2, 1981, Rufus and Teresa Watson filed a two-count declaration against Stacey, House, Donald H. Hadley (House's partner), and James V. Aluisi, Sheriff of Prince George's County. Count I alleged wrongful attachment and Count II prayed that the named defendants be enjoined from taking further action against the property.

The defendants demurred to the declaration alleging that there was probable cause for the issuance of the writ in that the deed was unacknowledged at the time it was shown to House and, therefore, was null and void. The plaintiffs argued at the hearing that although the deed was unacknowledged, it was sufficient to pass title and, therefore, precluded attachment. The court (Levin, J.) sustained the demurrer with leave to amend. The only changes made in the amended declaration were to correct the dates of the supplementary proceeding and the issuance of the writ. The court subsequently sustained the defendant's demurrer without leave to amend as to Count I. In the first appeal, we affirmed the lower court's dismissal of Count I and remanded for a ruling on Count II. (*Watson v. Watson*, appeal No. 193, September Term, 1982, Ct. of Sp.App., January 19, 1983).

Rufus Watson sold his house prior to trial on Count II and deposited in the court registry proceeds from the sale sufficient to satisfy the judgment. An Order of Condemnation for $2,729.79 of the deposited funds was issued.[2] The court, however, granted the plaintiffs' motion to stay the Order pending appeal of the court's ruling on Count II.

The defendants moved for costs and attorney fees for the defense of Count I. The court (Ahalt, J.), finding a lack of substantial justification for the bringing of a wrongful attachment suit, awarded attorney fees pursuant to Md. Rule 1–341 in the amount of $18,851.03. This ruling led to the plaintiffs' second appeal to this court where we held the award should not include an amount for legal work per-

---

**2.** This amount included attorney fees and costs.

formed on Count II until Count II was finally resolved. We vacated the award for counsel fees and remanded for further proceedings. (*Watson v. Watson,* No. 76, Sept. Term, 1985, Ct. of Sp.App., January 30, 1986.) Upon remand, the lower court reduced the award to $15,548.22 and entered judgment against the plaintiffs and (for the first time) jointly against their attorney, Dale A. Cooter, Esq. The plaintiffs' third appeal was from this judgment; however, because there remained issues outstanding, the appeal did not arise from a final appealable judgment and we granted the defendants' motion to dismiss pursuant to Rule 1035b.1. We will review the issue of those attorney fees in this appeal.[3]

Subsequently, this court affirmed the lower court's dismissal of Count II, which sought injunctive relief. The plaintiffs filed a petition for a writ of *certiorari,* which the Court of Appeals granted on January 23, 1985. The Court held that the unacknowledged deed was not *per se* invalid as a matter of law and might have passed equitable title depending upon "the facts concerning the dates of the marriage, of the agreement, of the execution of the deed and of its delivery." *Watson v. Watson,* 304 Md. 48, 64, 497 A.2d 794 (1985). The Court opined that, such facts "should be the subject of examination, cross-examination, and fact finding," and remanded the case without affirmance or reversal. *Id.* at 65, 497 A.2d 794. Thereafter, the case proceeded to trial on Count II, in accordance with the Court of Appeals decision, to determine whether the conveyance was legitimate or had been made to prevent the collection of a judgment.

The Circuit Court for Prince George's County (Blackwell, J.) found that Rufus and Teresa Watson, the appellants herein, had in fact engaged in "both constructive and actual fraud" in the conveyance of the property and ruled that the

---

3. The appeal was entered by James E. Tompert, Esq., of Cooter & Gell, "on behalf of Plaintiffs Rufus S. Watson, Jr. and Teresa S. Watson and non-party Dale A. Cooter."

writ of *fieri facias* was effective against any transfer of title between Rufus and Teresa Watson. In addition, the court awarded Stacey Watson $2,000 in attorney fees for her defense of Count II. Judge Blackwell, however, did not make an assessment for part of these fees against the appellants' attorney, Cooter, as Judge Ahalt had in Count I. The court, however, provided the appellants thirty days to present "any reasons why they contend such fees and costs should be assessed against their attorney."

The appellants, plaintiffs below, present the following questions for our review:

I. Should the burden of proof for Count II have been shifted for plaintiffs to prove the absence of a fraudulent conveyance?

II. Was the award of attorney fees for Count I proper when there was no segregation of fees between Counts I and II?

III. Should the award of attorney fees for Count I have been assessed against counsel when there was no prior notice given to counsel and no finding of bad faith or lack of substantial justification?

IV. Should attorneys fees have been awarded for Count II on grounds of a factual finding of a fraudulent conveyance?

V. Should plaintiffs' counsel have been ordered to inform plaintiffs of a conflict of interest for the award of attorneys fees as to Count II.

### I. Fraudulent Conveyance

The Court of Appeals remanded this case to the lower court because it believed "the facts concerning the dates of the marriage, of the agreement, of the execution of the deed and of its delivery should be subject to examination, cross-examination, and factfinding." *Watson*, 304 Md. at 65, 497 A.2d 794. The Court instructed that first there be a finding of whether there was "a contract to convey." If there were such a contract, then there should be a finding

of "whether a conveyance made pursuant to that contract was void as a fraud on creditors."

A trial limited to answering the questions posed by the Court of Appeals was held. The lower court (Blackwell, J.) found that although there had been a contract to convey, Rufus Watson's transfer of his house to himself and Teresa was that of a fraudulent conveyance. The appellants contend, however, that the lower court improperly shifted the burden of proof to them to show that the transfer was not fraudulent.

In determining whether a conveyance is fraudulent, the burden of proof is initially on the party attacking the transaction as fraudulent. It is, however, "well established in this State that facts and circumstances may be such as to shift the burden to the grantee to establish the bona fides of the transaction." *Berger v. Hi–Gear Tire & Auto,* 257 Md. 470, 475, 263 A.2d 507 (1970) (citations omitted). The reason being that:

> [A] creditor attempting to set aside a conveyance as fraudulent can seldom prove as an independent fact the knowledge of or participation in the fraud of the grantor by the grantee. That knowledge or participation must be gathered from the various facts and incidents composing the transactions and its environment. The primary presumption here, as elsewhere, is in favor of innocence and good faith, but a state of facts may be shown which will negative that presumption, and cast upon the grantee the burden of proving his good faith and nonparticipation in the fraudulent purpose of the grantor.

*Id.* (quoting *McCauley v. Shockey,* 105 Md. 641, 646 (1907)).

In the case at bar, a reading of the lower court's opinion indicates that credibility was the key issue in the finding of fraud. Rufus's testimony was termed "often incredible" and "[t]he court [found] little, if any, evidence to support [Teresa's] professed innocent participation in the transaction—but much to the contrary."

The *Berger* court noted that:

The facts which are recognized indicia of fraud are numerous, and no court could pretend to anticipate or catalog them all. Among the generally recognized badges of fraud are the insolvency or indebtedness of the transferor, lack of consideration for the conveyance, relationship between the transferor and the transferee, the pendency or threat of litigation, secrecy or concealment, departure from the usual method of business, the transfer of the debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property.

Although it has been said that a single badge of fraud may stamp a transaction as fraudulent, *it is more generally held that while one circumstance recognized as a badge of fraud may not alone prove fraud, where there is a concurrence of several such badges of fraud an inference of fraud may be warranted.*

*Id.* [257 Md.] at 476, 263 A.2d 507 (emphasis added) (quoting 37 Am.Jur.2d, Fraudulent Conveyance, § 10 (1968)).

█ Seven of the above nine noted indicia of fraud were found in the instant case by the lower court. Rufus was indebted at the time of the claimed transfer and did not have enough money to satisfy Stacey's modest judgment. Rufus and Teresa lived together with their children and shared expenses of their household. Rufus was indebted to Stacey on a note and faced the threat of litigation if the note were not paid. The deed between the plaintiffs was kept secret, unacknowledged, undelivered, and unrecorded until January, 1981. Although the deed was dated November 29, 1979, before the plaintiffs were married, and although the plaintiffs' premarital agreement dated November 19, 1979, stated that Rufus's real property "has this day been conveyed to the parties as tenants by the entireties," the plaintiffs testified that the deed was executed sometime around December 5, 1979, after they were married. Rufus, by his premarital agreement, attempted to transfer his entire estate while reserving his ownership and retaining possession. We hold that the confluence of the indicia of

fraud and the inference of fraud which they generate were sufficient to support the trial court's decision to shift to the plaintiffs the burden to show their transaction was bona fide.

The appellants contend that "[c]ounsel for Stacey, House, did not present one witness and chose merely to cross-examine plaintiffs' witnesses." They further argue that "there was absolutely no evidence whatsoever" to contradict their testimony that the Watson house was transferred for a promise to marry.

█ It is clear that the trier of fact elected not to believe the testimony of the appellees. Absent a showing that the finding of the trial judge was clearly erroneous, we shall affirm his ruling. Md.Rule 1086.

## II. Attorney Fees as to Count I

The appellants argue that the assessment of attorney fees on remand for Count I was improper because the appellees failed to segregate the fees for Count I and Count II. The appellants contend that the appellees' attorney Joseph Cunningham (Cunningham) "merely took his prior affidavit for fees (the basis which served for the previous award of $18,851.30 that was vacated by this court) and imposed a cut-off of February, 1983, the date of the first memorandum opinion in this case by this court." We disagree.

The *per curiam* opinion filed by this court stated:

[T]he bill for counsel fees as submitted by appellees is so intertwined with respect to both counts of the declaration as to require evidence as to what part of the charges relate to which count.

. . . . .

We have an entirely different view insofar as the attorney fees incurred by the appellees Arthur G. House and Donald H. Hadley for defense of themselves. *Their defense is not interwoven with Count II.* Since the hearing judge found that the suit against them was

brought without substantial justification, he was empowered to award fees to House and Hadley. Md.Rule 1–341. *Watson v. Watson,* No. 76, Sept. Term, 1985, Ct. of Sp.App., January 30, 1986. (emphasis added).

At the hearing on attorney fees, Cunningham was asked by the appellants' attorney, "How much is it that is claimed at this point in attorney fees for the representation of Mr. Hadley and Mr. House on Count I of the law suit?" Cunningham responded:

The figure is—if you will give me a minute—for my time $4,218.75 for the period of from February 1981 when you filed suit against my clients through February 1983 when the Court of Special Appeals rendered its decision, its first decision in the matter having to do with Count I as to the malicious prosecution count that was brought against the attorneys and their client.

As to that same time period, the associates that worked on the case under my supervision, amassed a total of $10,969.60.

Exhibits as to both of the breakdowns for myself and the associates are attached to the affidavits so that you have it by specific task, specific period during the year and specific amount of time allocated to each task.

Finally, for the same period that I have just adverted to, there were costs incurred of $360.45 again broken down on an exhibit attached to the affidavit we have submitted to you, Mr. Cooter. I don't have a calculator here, but if you add those three figures together, you come to a figure slightly somewhat in excess of $15,000.

He explained further that:

I did not provide segregate, separate services for her [Stacey Watson] over and above what I would have normally done if she were not in the case, if she were unknown to us.

In essence, Cunningham was hired by the insurance carrier of Hadley and House to defend them against Count I of appellants' declaration, wrongful attachment. As Count II

of the declaration stated the requested relief and not a cause of action, any representation provided was necessarily for Count I. As success on Count I would result in a denial of Count II, any and all work performed by Cunningham was clearly done solely in defense of Count I, regardless of the cut-off date.

■ We believe that the mere fact that certain legal issues involved in Count I were also involved in Count II did not deprive House and Hadley of their entitlement to counsel fees. The same time and services would have been rendered by Cunningham if Count II were not part of the action. As stated by counsel:

> Everything that we have done that I have given you in this affidavit and these attachments related to Count I, related to these two attorneys, related to the work that we did for them. You can't segregate out as to Count II because there was no work really done separately and apart as to that issue or that woman [Stacey Watson].

We hold that the lower court's determination to impose the sanction against the appellants for attorney fees was proper, and that the assessment of $15,548.22 was reasonable as to Count I.

### III. Imposition of Attorney Fees Against Counsel as to Count I

As previously stated, upon the enrollment of the judgment as to Count I, the defendants therein, Stacey Watson, House, and Hadley, moved for an award of costs and attorney fees against the plaintiffs, Rufus S. Watson, Jr. and Teresa S. Watson. As discussed in the previous section, the trial court awarded appellees' attorneys fees in the amount of $18,851.03. As the award also included attorney fees regarding Count II, which was then being considered by the Court of Appeals, we vacated the judgment and remanded the case to the trial court to determine the amount of counsel fees to be paid House and Hadley for their defense.

At the remand hearing as to Count I, the trial judge stated, "I will enter a judgment based upon my findings in the amount of $15,548.22 in favor of Arthur G. House and Donald H. Hadley against Rufus S. Watson, Jr., and Teresa S. Watson, *and their attorney.*

Immediately thereafter, the transcript reflects the following colloquy.

MR. COOTER: There was never a claim against the lawyer, Judge.

THE COURT: Do you agree?

MR. HOUSE: Just one moment. Judge, our position is that the award should be against both of the plaintiffs and counsel.

MR. COOTER: Well, that may be their position, but that isn't what they asked for. If the Court will look at the pleadings, the original motion, whatever supplemental motions were, attorney's fees, that isn't what they asked for, and I am entitled to notice before somebody purports to bring a claim against me personally.

THE COURT: And their attorney, as their agent in this action, Dale Cooter.

MR. COOTER: You are rendering a judgment against me, sir?

THE COURT: Yes.

Md.Rule 1–341 states:

In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party *or the attorney advising the conduct or both of them* to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney fees, incurred by the adverse party in opposing it.

(emphasis added).

The appellants argue that the trial court failed to make a finding that *Cooter* acted in bad faith or without substantial

justification. Additionally, they argue that Cooter never had any prior notice of the claim made against him for attorney fees and had not been afforded an opportunity to be heard in his individual capacity as to why a claim against him personally was without merit.[4]

As observed by the Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464–65, 65 L.Ed.2d 488 (1980):

> The bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith. " '[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 15 [93 S.Ct. 1943, 1951, 36 L.Ed.2d 702] (1973). See *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (CA2 1977).
>
> .    .    .    .    .
>
> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against

---

4. Appellants are also represented in this appeal by the same Dale A. Cooter, Esq., who represented them below and who seeks to reverse a judgment for his share of the attorney's fees entered against him jointly and severely with his clients. We trust that this obvious conflict of interest between Mr. Cooter and the appellants did not violate Rule 1.7(b) and (c) of the Maryland Lawyers' Rules of Professional Conduct:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after consultation.
> (c) The consultation required by paragraphs (a) and (b) shall include explanation of the implications of the common representation and any limitations resulting from the lawyer's responsibilities to another, or from the lawyer's own interests, as well as the advantages and risks involved.

counsel who willfully abuse judicial processes. See Renfrew, Discovery Sanctions: A Judicial Perspective, 67 Calif.L.Rev. 264, 268 (1979). Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such sanctions are within a court's powers.

■ Although the original claim for attorney fees was brought solely against the litigants in the matter at bar, we hold that a Maryland trial judge has statutory authority to impose litigation expenses, including those of attorney fees, against counsel who willfully abuse judicial processes.

In *Blanton v. Equitable Bank, Nat'l Ass'n,* 61 Md.App. 158, 166–67, 485 A.2d 694 (1985), we considered a similar question as to whether a separate hearing was required before imposing attorney fee sanctions on an appellant who filed an appeal from an interlocutory order. Writing on our behalf, Judge Adkins observed:

It may be that under some circumstances due process would require us to hold a hearing to decide whether sanctions should apply, and if so, the appropriate amount to be assessed, and against whom the assessment should be made. *See, e.g., Miranda v. Southern Pacific Transportation Co.,* 710 F.2d 516, 522–23 (9th Cir.1983) (attorney fee sanction improper where attorneys denied notice, opportunity to respond, and hearing). Those circumstances are not present here. Equitable's Rule 1–341 sanction motion was filed in this court on October 28, 1984. A copy was served on Blanton's counsel. No response to the motion was filed. No request for a hearing was made. In short, Blanton had notice, opportunity to respond, and opportunity to request a hearing. He did none of those things. We think Blanton has waived any right to a hearing. *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (1972) (due process rights to notice and hearing prior to civil judg-

ment subject to waiver). *See Schultz v. Pritts,* 291 Md. 1, 7, 432 A.2d 1319 (1981) (when administrative agency relies on evidence submitted after hearing, due process may be violated if no opportunity afforded to challenge the evidence; but there may be no due process violation if parties are aware that the evidence will be considered but make no objection).

■ In the case at bar, the award for attorney fees had initially been restricted to the litigants. Indeed, the purpose of the remand was merely to determine the amount of the sanction to be imposed upon the litigants as to Count I. Under these circumstances, we believe the court erred by expanding the original judgment on remand to include the litigants' attorney in the sanction. Although it is painfully obvious that the trial judge was properly vexed over the manner in which Cooter had advised his clients and had maintained the litigation, as the court had not previously included the attorney in the sanction, we must exclude that attorney from the sanction.

## IV. Attorney Fee Sanction as to Count II

After the trial of Count II, Stacey Watson moved for the cost of her attorney fees in her defense of that count. Upon hearing the motion, fees were assessed by the trial judge against the appellants "on the basis of a fraud holding under Rule 1–341," in the amount of $2,000.

The appellants argue that the award of attorney fees as to Count II was based upon a finding of fraud rather than on a finding of bad faith or without substantial justification pursuant to Rule 1–341. They rely principally on the holding in *Empire Realty Company v. Fleisher,* 269 Md. 278, 305 A.2d 144 (1973), and propound that *Empire* stands for the proposition that "a finding of fraud does not be [sic] itself justify an award of attorneys fees to the prevailing party."

*Empire* involved a matter wherein the plaintiffs had incurred expenses in assembling a tract of land for a proposed shopping center, but such expenses had been made prior to the defendants acquiring the land by means of fraud. The Court held that the plaintiffs could not recover the expenses incurred prior to the defendants' fraud because such expenses were not the proximate consequence of their reliance on the fraudulent act. The plaintiffs also sought damages for the expenses of litigation, including general legal fees. The court held that fraud in that particular case did not constitute the "special circumstances" necessary to permit an award of counsel fees. Most importantly, as pertains to the case at bar, the *Empire* Court observed:

> This Court has upheld the award of legal fees in separate litigation against another party caused by the wrongful acts of the defendant, *McGaw v. Acker, Merrall v. C. Co. supra* [111 Md.] at 160 [73 A. 731]; *cf. Fowler v. Benton, supra* [245 Md.] at 550 [226 A.2d 556]. Here, however, we are concerned with the question whether fees may be allowed for legal services rendered in the *instant* litigation. The principle was succinctly stated by our predecessors in *Rice v. Biltmore Apartments Co.*, 141 Md. 507, 516–17, 119 A. 364 (1922):
>
>> Whatever may be the law elsewhere, it has long been the settled law of this State that, in the absence of some *statutory provision*, a successful litigant is not entitled to recover the fees paid by him to attorneys for prosecuting the litigation.
>
> Manifestly, there is no statutory authority to support the award made here.

In the case *sub judice*, Judge Blackwell had not only specifically referred to Rule 1–341 in reaching his determination, but also previously found

> that plaintiffs Rufus and Teresa Watson joined in a fraudulent conveyance, their intent being to hinder, delay and defraud Rufus's creditor, defendant Stacey Watson,

and to leave Rufus without sufficient assets from which to satisfy defendant's recorded judgment.

It is important to understand that *after* Rufus and Teresa Watson had engaged in their fraudulent acts of deception, they sued their rightful creditor, Stacey Watson, for $200,-000 for having attached the property that they had fraudulently conveyed. Furthermore, as to Rufus Watson's ability to understand the nature and consequences of his acts, he spread upon the record that he was a member of the Pennsylvania Bar and an attorney for the United States Department of Transportation.[5]

■ As Judge Blackwell awarded counsel fees pursuant to Rule 1–341, we hold that the imposition of the sanction was proper. *See Colonial Carpets v. Carpet Fair,* 36 Md.App. 583, 374 A.2d 419 (1977).

### V.  Notice to Client of Counsel's Conflict of Interest

As previously discussed, Judge Blackwell imposed the sanction of attorney fees as to Count II on Rufus and Teresa Watson rather than include their attorney as Judge Ahalt did in Count I.

In Judge Blackwell's order, Cooter was directed to notify his clients of a conflict of interest in arguing that such cost of fees should not be assessed against counsel. The appellants argue that the order by the court was improper and ask us to vacate it. The request is so absurd, specious and frivolous as to be unworthy of response.

JUDGMENTS AGAINST APPELLANTS IN COUNT I AND COUNT II AFFIRMED. JUDGMENT IN COUNT I IMPOSING ATTORNEY FEES ON DALE A. COOTER, ESQ., REVERSED. COSTS TO BE PAID BY APPELLANTS.

---

**5.** The record also reflects that Watson acknowledged that he had wrongfully held himself out to be a member of the Maryland Bar in his divorce proceedings.